John Krumin, Appellee, v. Vincent Bruknes, Appellant.

Gen. No. 33,818.

504

O'CONNOR, J., dissents.

Opinion filed January 27, 1930.

ODE L. RANKIN, for appellant.

HAROLD O. MULKS, for appellee.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

Plaintiff brought suit seeking damages for an alleged libel and upon trial had a verdict and judgment of $500. Defendant appeals, claiming that the alleged libelous documents were confidential communications absolutely privileged.

Plaintiff is the brother-in-law of defendant, defendant's wife being plaintiff's sister. Plaintiff was an automobile mechanic and defendant a butcher clerk, but in 1921 they formed what was called the Salutarus Drug and Chemical Company and operated a drug store, employing a registered pharmacist. Defendant withdrew from the copartnership in 1925. Defendant and his wife separated and divorce proceedings were instituted. Apparently plaintiff favored his sister's side in the controversy with her husband, the defendant. Plaintiff was born in Europe and in 1925 applied for citizenship in the United States District Court at Chicago. Defendant heard of this and went to the Naturalization Bureau, which is under the jurisdiction of the Labor Department of the Federal Government, in the Federal building at Chicago, and there made affidavits. charging, in substance, that plaintiff was a bootlegger and conducted a "fake" drug store; that he sold moonshine and was. engaged in the illegal sale of intoxicating liquor; that he had abandoned his wife and that he was the cause of the discord between defendant and his wife. These affidavits contained the matter which plaintiff claims is libelous. Upon the trial defendant offered to show

that the officer in the Naturalization Bureau promised the defendant that the communications would be considered as private and privileged and not disclosed, and that the officer had suggested that defendant use an assumed name for the purpose of secrecy in making the affidavits, which was done. The court sustained an objection to this offer.

A subpoena *duces tecum* was served on the District Director of the Naturalization Bureau directing him to produce the two affidavits in question. The director appeared upon the trial, admitted that the affidavits were in his official possession but declined to produce them or to testify as to their contents on the ground that he was prohibited from doing so by the rules of the Department of Labor of the United States, which rules provided that no one should produce documents in the jurisdiction of his office for the purposes of evidence. A copy of the rules and regulations was produced in court and upon objection the trial court ruled that the District Director could not be compelled to divulge the affidavits. Plaintiff's counsel seems to have acquiesced in this ruling. It is not claimed that the State court could compel the production of the original documents.

In the spring of the following year, 1926, the parties apparently became friendly and defendant indicated that he was willing to retract some of the statements made in the affidavits and to help plaintiff to obtain his citizenship papers. The parties called at the office of the United States District Attorney with their respective attorneys. Defendant then told the District Attorney that some of the things in the affidavits were right and some were wrong. After questioning the parties further, the District Attorney announced that in his opinion "it was a family trouble and nothing else," and advised defendant to make up his differences with his wife. Citizenship papers were shortly thereafter issued to plaintiff. Subsequently there was

a meeting of all the parties to adjust their differences, including the trouble between defendant and his wife. Apparently one of the terms of the settlement was that defendant should pay plaintiff's attorneys' fees and for his trouble in procuring his citizenship papers, and defendant promised to pay $500, but the parties could not agree with reference to some household silverware, so that hostile relations were resumed.

Were the communications in question absolutely privileged? Privileged communications are of two kinds: (1) those absolutely privileged; and (2) those only conditionally privileged. Speaking generally, communications absolutely privileged are those so much to the public interest that the informer should speak out his mind fully and fearlessly so that all actions in respect of words thus spoken are absolutely forbidden, even though it be alleged that the words were spoken falsely, knowingly and with express malice. Communications conditionally privileged are where the interests of the public do not demand that the speaker should be free from all responsibility but merely require that he should be protected so long as he is speaking honestly for the public good. In such cases a plaintiff may recover damages in spite of the privilege, if he can prove that the defendant in using the defamatory words was not acting in good faith but was actuated by some improper motive, such as malice. Odgers on Libel and Slander, 6th Ed., p. 187. In *Iddings v. Houser,* 237 Ill. App. 236, this classification is stated, with many supporting cases. As a general rule, public policy forbids the maintenance of any suit, the trial of which would inevitably lead to the disclosure of matters which the law itself regards as confidential and with respect to which it will not allow the confidence to be violated. *Totten v. United States,* 92 U. S. 105; Jones on Evidence, 2nd Ed., vol. 5, section 2201. And on like grounds of public policy a privilege exists against the disclosure of official docu-

ments and communications, the publication of which would be injurious to the government as destructive of freedom of official communication in furtherance of duty.

A leading case on the subject is *Hoske v. Comingore,* 177 U. S. 459, opinion by Mr. Justice Harlan. There, a collector of internal revenue had been imprisoned by order of a State court of Kentucky for refusing to produce certain monthly reports in his custody made by a certain manufacturer. In holding the imprisonment improper the court held that such reports were executive documents which the United States in its sovereign capacity acquires for the sole purpose of administering its own governmental affairs; that such documents are quasi-confidential; that any demand for their use by an outside party must depend for success upon the courtesy of the government and upon its notion as to the public policy of complying with the request; that no litigant has any right to their use upon any other basis than such as may be fixed by the United States or under its authority, and that the head of the United States department has lawful authority to control or to make regulations for controlling that property and its custody; that a State court has no lawful jurisdiction or power to impose upon the United States officer the duty of making copies of such communications or of permitting others to make them, or of compiling information from their contents; and that the effort to make the custodian testify to their contents is virtually an attempt to compel the United States to produce them. The proposition underlying these holdings is that no one can acquire any right or control over this class of papers belonging to the United States except by its authority.

May voluntary communications from citizens and informers to the United States government be absolutely privileged? The fundamental principle on which the rule is based is stated by Mr. Justice Gray,

subsequently in the United States Supreme Court, in *Worthington v. Scribner*, 109 Mass. 487:

"It is the duty of every citizen to communicate to his government any information which he has of the commission of an offense against its laws. To encourage him in performing this duty without fear of consequences, the law holds such information to be among the secrets of state, and leaves the question how far and under what circumstances the names of the informers and the channel of communication shall be suffered to be known, to the absolute discretion of the government, to be exercised according to its views of what the interests of the public require. Courts of justice therefore will not compel or allow the discovery of such information, either by a subordinate officer to whom it is given, by the informer himself, or by any other person, without the permission of the government. The evidence is excluded, not for the protection of the witness or of the party in the particular case, but upon general grounds of public policy, because of the confidential nature of such communications."

There is a seeming diversity of opinion on this question. The weight of authority, however, seems to hold that such communications are absolutely privileged because persons having knowledge regarding the commission of a crime ought to be encouraged to reveal the same to the proper authorities fully, freely and unreservedly; that the possibility that what they say under such circumstances will be used against them tends to impose a natural restraint upon their conduct and to deprive the officer of the benefit of their services. *Michael v. Matson*, 81 Kan. 360, in which the cases on the subject are collected; 5 Jones on Evidence, section 2203. In *State ex rel. Douglas v. Tune*, 199 Mo. App. 404, it was sought to mandamus the members of the Complaint Board of the City of St. Louis to produce certain letters in their custody and which were sent by writers voluntarily. It was claimed that these

letters established the right of an action for libel in the relator against the writers of the letters. After considering a number of cases it was held that the respondents were justified in their refusal to permit the relator to inspect the letters and in refusing to allow him to make a copy of them on the ground that such communications were confidential in their character.

In *Vogel v. Gruaz,* 110 U. S. 311, plaintiff obtained a judgment for damages in an action on the case based on alleged defamatory communications made by defendant concerning the plaintiff to the State's Attorney. The Supreme Court reversed the judgment on the ground that such communications were absolutely privileged. There was a similar decision in *Hott v. Yarborough,* 112 Tex. 179, in which a defendant wrote a letter to the foreman of a grand jury and the county attorney charging the plaintiff with the commission of a crime and requesting an investigation. A libel suit followed, and upon trial plaintiff had judgment against defendant, but upon appeal it was held that the communications were absolutely privileged. To the same effect is *Schultz v. Strauss,* 127 Wis. 325. There are many cases holding that defamatory statements in papers filed in a judicial proceeding are absolutely privileged. *Strauss v. Meyer,* 48 Ill. 385; *Jones v. Brownlee,* 161 Mo. 258; *Michael v. Matson,* 81 Kan. 360; *Shinglemeyer v. Wright,* 124 Mich. 230; *Rall v. Donnelly,* 56 Ill. App. 425; *Beggs v. McCrea,* 70 N. Y. S. 864.

We have examined the cases cited by plaintiff's attorney which it is said hold to the contrary; in most of them, except one, the alleged defamatory statements were irrelevant to any question or issue in the proceedings in which they were made. *Kintz v. Harriger,* 99 Ohio St. 240, is the exception cited by plaintiff. We have read this eloquent opinion by Mr. Justice Wanamaker and are not disposed to accept all that is said

therein. There, the alleged libelous matter was information given by a witness testifying before the grand jury. The opinion concedes that "the weight of precedent for a century or more, in both American and English ruling cases, is undoubtedly to this effect," namely, that statements made under such circumstances are absolutely privileged; but the opinion very frankly proceeds to consider the same "in the light of fundamental facts and primary principles, rather than upon mere precedent."

From a consideration of the above cited cases and many others which might be produced, we are of the opinion that the affidavits in question come under the head of absolutely privileged communications. The trial court was correct in ruling that the District Director in the Federal office could not be compelled to produce the documents or disclose the contents of same; that the production of these was solely within the control of the United States government, and when the head of the department issued a rule to the effect that such documents were State secrets not open to the public, the District Director was under compulsion to obey such regulations and properly refused to produce them upon the trial.

It would seem to follow as a natural corollary that secondary evidence or copies of the documents were inadmissible as evidence, for if such secondary evidence was competent, the very purpose of the rule regulating the control of the originals as secret documents of State would be defeated. The record before us does not indicate how these alleged copies of the affidavits were procured, but this is unimportant. The originals being absolutely privileged communications, copies or any secondary evidence of the contents of the same were also incompetent. This is in accord with the holding in *Boske v. Comingore,* 177 U. S. 459, above referred to, where it is said that the State Court has no

right or power to permit the making of copies or of compiling information of the contents of such documents.

The power to naturalize aliens is judicial and must be exercised by the court. 2 C. J. 1120; *Behrensmeyer v. Kreitz*, 135 Ill. 591. 90 days previous notice must be given of the time and place of the hearing by posting in a public place; this is to give ample time for the government officials to ascertain the facts as to the applicant's qualifications. It is also, in effect, a summons to the public to impart any information it may have as to the applicant. Good character is one of the chief qualifications of citizenship and upon the hearing the possession of this attribute is perhaps the most important issue to be determined. Persons having relevant information should be encouraged to impart it and should be free to speak freely, unfettered by fear of being held to respond in damages. It is of vital importance to the perpetuity of our institutions that the gateway to citizenship be carefully guarded. This is the policy of the United States. This can be done only when communications touching applications for citizenship are protected as absolutely privileged. Any other rule would violate the spirit and purpose of our naturalization laws with deplorable results. Inevitably, in some cases this rule will produce hardships, if not wrong, to individuals. We apprehend the number of such instances, however, will be negligible; in fact, we find no case like this in the books. As against such infrequent and individual wrongs, the larger interests of the public must be paramount.

We hold that the alleged libelous communications are absolutely privileged. For the reason indicated the judgment is reversed with a finding of fact, and, as under the law there can be no recovery in this case, the cause will not be remanded.

*Reversed with a finding of fact.*

MATCHETT, J., concurs.

O'CONNOR, J., dissents.

We find as an ultimate fact that the alleged libelous documents described in plaintiff's declaration were confidential communications absolutely privileged, and that plaintiff is not entitled to prosecute this action thereon.

MR. JUSTICE O'CONNOR dissenting: The rule in reference to privileged communications stated in the majority opinion has been repudiated by the Supreme Court of Ohio in the case of *Kintz v. Harriger,* 99 Ohio St. 240. But in my opinion the rule does not apply in the instant case because it appears that the contents of the affidavit filed by the defendant with the government officials in charge of naturalization was known to all parties in this case. It was exhibited by the government official to plaintiff and other parties and the contents of it retracted by the defendant. The government official, after discussing the matter with the parties, reached the conclusion that the affidavit was made by the defendant as the result of a family quarrel and the charges made in it were disregarded by the government in permitting plaintiff to be naturalized. A copy of the affidavit was produced on the trial.

Dean Wigmore of the Northwestern University Law School, in his work on Evidence, section 2374, 2nd Ed. (after recognizing the rule of privileged communications by information to the government and after stating that such communications ought to receive encouragement, and after citing a number of authorities where the rule was applied, including opinions by the Supreme Court of the United States, some of which are cited in the major opinion) says:

''This privilege is well established, and its soundness cannot be questioned. But it is subject to certain limitations, inherent in its logic and its policy:

''(1) The privilege applies only to the *identity* of the informant, not to the contents of his statement as

such, for, by hypothesis, the contents of the communication are to be used and published in the course of prosecution. Much less does the privilege apply to prevent merely the proof of contents which have already been '*de facto*' disclosed,—as in an action against the informant for libel. To deny production in such a case is in effect to declare that the libel is privileged from liability. If that is indeed the judicial belief and the law, it should be frankly declared; if not, the action should not be defeated by an evasion which pretends to keep secret that which is not secret.

"(2) If the identity of the informer is *admitted or known*, then there is no reason for pretended concealment, and the privilege of secrecy would be merely an artificial obstacle to proof. . . .

"(4) Even where the privilege is strictly applicable the *trial court may compel disclosure*, if it appears necessary in order to avoid the risk of false testimony or to secure useful testimony."

In the instant case, since the contents of the affidavit were known to all the parties to the suit, its "pretended concealment," as Dean Wigmore says, is merely an artificial obstacle to proof. The contents of the affidavit having become public, the reason for the rule, even if it were sound, ceased and the court erred in excluding it.