456

George D. Kimball, Appellant, v. James W. Ryan et al., Appellees.

Gen. No. 38,527.

Opinion filed February 3, 1936. Rehearing denied February 17, 1936.

Samuel J. Andalman, of Chicago, for appellant.

Peden, Melaniphy, Ryan & Andreas, Michael F. Ryan and Julius C. Greenbaum, all of Chicago, for appellees.

Mr. Justice O'Connor delivered the opinion of the court.

Plaintiff brought an action against the defendants to recover damages for an alleged libel. Defendants interposed a motion to strike the complaint on the ground that it did not state a cause of action. The motion was sustained, the complaint stricken, judgment entered against plaintiff for costs, and he appeals.

It is alleged in the complaint that an aldermanic election was to be held February 26, 1935, in the City of Chicago; that under the law, one desiring to become a candidate was required to file his petition with the election commissioners of the City of Chicago; that the petition should be signed by a certain number of qualified and registered legal voters of the ward in which a person desired to submit his candidacy to the voters; that plaintiff, a qualified voter of the ward, was requested by the candidate to circulate the candidate's petition and obtain signatures to the petition to be filed with the election commissioners; that plaintiff, in accordance with the request, obtained the signatures of 25 qualified voters of the ward to the candidate's petition, and this petition, together with 37 other similar petitions, was filed with the election commissioners; that the petitions so filed contained the requisite number of signatures of voters, and that the candidate complied with all the requirements of the law to entitle his name to appear on the official ballot as a candidate for alderman of the seventh ward at the election on February 26, 1935.

It is further alleged that two other candidates filed their petitions with the election commissioners so that

their names might also appear on the ballot as candidates for aldermen at the same election; that one of the candidates was the sitting alderman who desired to run for re-election; that defendants were members of the Democratic Club of the ward and upon the filing of the petitions of plaintiff and the other candidates, defendants entered into a conspiracy for the purpose of procuring the re-election of the sitting alderman and to prevent the names of the two opposing candidates from appearing upon the ballot, "and did then and there enter into a conspiracy and agreement to commit slander and libel against the plaintiff and others" to carry out their purpose of preventing the two opposing candidates' names from appearing on the ballot; and for the purpose of carrying out the conspiracy it was agreed that one of the defendants should file written objections to the petitions of the two opposing candidates with the election commissioners who were "designated by law to hear and pass upon" such objections; that one of defendants, pursuant to said agreement and conspiracy, filed written objections in which it was stated that many of the registered voters whose names were written on the petition, did not in fact sign such petitions but that their signatures were forgeries, and that the objector, in and by such written statement, charged that a number of persons whose names appeared to be signed to the petitions circulated by plaintiff and others did not, in fact, sign such petitions, and that many of the signatures obtained by plaintiff were forgeries; that in such objections, pursuant "to said conspiracy," it was further stated that the circulators of many of the sheets of the petition, did not, in fact, personally circulate the sheets, and did not personally see all of the persons whose names appeared on the sheets write their names thereon, as was asserted by the circulator in his affidavit to each of said sheets, and that by such statement the objector

"intended to and did charge" that plaintiff did not personally circulate the sheet and did not see all of the persons whose names appeared on the sheet write their names on it; that "in pursuance to said conspiracy" the objector further stated in such objections that the circulators of the sheets did not appear before notaries public whose signatures and seals were attached to the sheets, and that a number of the circulators of the sheets did not, in fact, sign the sheets as purported in the presence of notaries public, and did not swear to such petitions before them; that by such statement the objector intended to and did charge that plaintiff did not, in fact, appear before a notary public and did not sign and subscribe to the petition in the presence of the notary and did not swear to such petition; that in pursuance of such conspiracy by the defendants the objector further stated in the objections filed, that the circulators of many of the sheets did not personally see each of the signers sign the sheets as purported by the affidavit, and specified certain names which appeared on four different sheets, including the one circulated by plaintiff, and that by such statement the objector intended to and did charge that plaintiff did not circulate the sheet procured by him, did not see all of the persons sign their names to the sheet, as he stated in his affidavit to the sheet, and thereby defendants charged that "plaintiff committed perjury"; that in furtherance of the conspiracy it was stated in the objections filed that a number of the circulators of the sheets did not appear before the notaries public whose names and seals were attached to the several sheets as purported, and did not sign their names in the presence of the notaries, and among those circulators plaintiff was named; that in and by such statement the objector intended to and did charge that plaintiff did not, in fact, appear before the notary public, and that he did not swear to the petition, and therefore plaintiff was

charged with committing perjury; that in furtherance
of the conspiracy it was further stated in the objections
filed that a number of the signatures on the sheets were
written by the same persons and were not, in fact,
signed by the persons as purported to be done.   Then
follow a number of names that appear upon the several
sheets, including the sheet circulated by plaintiff, and
it is charged that by such statement the defendants in-
tended to and did charge that two names appearing on
the sheet circulated by plaintiff were not signed by
such persons, and therefore charged plaintiff with hav-
ing committed perjury in his affidavit attached to such
sheet.   It was further alleged that the signatures on
the sheet circulated by plaintiff were the genuine signa-
tures of the persons whose names appeared thereon,
and that the statement made in the objections was false
and that plaintiff did make the affidavit as shown by
the sheet circulated by him.

It was further alleged that in furtherance of the con-
spiracy defendants procured some person unknown to
plaintiff to sign a purported affidavit before a notary
public.   The purported affidavit is then set up verbatim
and purports to be made by one of the persons whose
name appears on the sheet or petition circulated by
plaintiff, in which such person purports to swear that
she did not sign such petition; and in the purported
affidavit it is said that it is made for the purpose "of
presenting the same before the Board of Election Com-
missioners . . . in connection with objections filed to
the nominating petition of FLOYD M. SAXON," one of
the candidates.   It is then alleged that the statement
or affidavit was a forgery and known to be such by
defendants, and that by procuring it defendants in-
tended to and did charge that plaintiff had committed
perjury, whereas the fact was that the person whose
name appeared on the sheet circulated by plaintiff did
sign it; and that five similar statements or affidavits

were obtained and similar charges are made in reference to them.

It is further alleged that in furtherance of the conspiracy defendants procured a person unknown to plaintiff to forge the name of a person, whose name appeared on the sheet circulated by plaintiff, to a purported affidavit, that such person had not signed the sheet; that defendants knew this affidavit was a forgery and that by it defendants "charged and published to the world at large" before a notary public before whom it was purported to have been sworn to, and others, that plaintiff had committed perjury when he swore to the sheet circulated by him, whereas in truth and in fact, the person whose name appeared on the affidavit did sign the petition circulated by plaintiff; that in furtherance of the conspiracy defendants procured another false and fraudulent affidavit purporting to have been sworn to before a notary public, and the same charges are made in the complaint as to this alleged affidavit as in the one above mentioned. And it is further charged that in furtherance of the conspiracy defendants procured 150 other similar forged affidavits as to the genuineness of signatures to the petition of one candidate and 66 of the affidavits signed to the petition of the other candidates, and that all of such affidavits were forged and contrary to the facts; that all the signatures to the petition circulated by the plaintiff are genuine.

It is then alleged that at the time in question there was a statute in effect which provided for the nomination of candidates for alderman by petition and that such petitions should conform with the provisions of the election and ballot laws then in force in the City of Chicago; that there were certain election laws then in effect, which are set up in the complaint, and that the statute which required the several petitions circulated (as was the one by plaintiff) required that each sheet

be sworn to by the circulator; and it is alleged that plaintiff signed and swore to the petition or sheet circulated by him; that the defendants, in furtherance of the conspiracy, well knew that all of the statements made in the affidavit to the petition circulated by plaintiff were true, but maliciously intending to injure plaintiff in his good name and reputation, they wickedly composed and published the written statements above mentioned; that such statements were false and scandalous, and that by such statements defendants meant to charge that plaintiff swore falsely to the affidavit attached to the petition circulated by him, and further, intended to charge him with forgery of certain names appearing on the petition, and that he was thereby damaged.

Plaintiff's theory in this court, as stated by his counsel, is that the allegations of the complaint with reference to the objections filed before the election commissioners to the two aldermanic petitions are mere inducements, and that the basis of his suit is the publishing by defendants of the eight statements or affidavits mentioned in the complaint and which were to be used in support of the objections filed. We think this position is not borne out by the record.

The complaint is in 47 paragraphs, the first 27 have to do solely with the objections filed before the election commissioners. The allegations concerning the eight alleged affidavits claimed to be procured by defendants in furtherance of the conspiracy, are mentioned in paragraphs 28 to 35, inclusive, and most of the allegations of the remaining paragraphs of the complaint likewise have to do with the objections to the petition filed with the election commissioners.

Defendants contend that the Board of Election Commissioners is a *quasi* judicial body whose duty it is, under the law, to pass upon the sufficiency of petitions filed by persons seeking to become candidates for alderman and to hear any objections filed to such petitions;

that the written objections filed in the instant case, and the affidavits filed in support thereof, are absolutely privileged; that this appears from the allegations of the complaint, and therefore plaintiff's action for alleged libel will not lie.

It is the law that a person is not subject to be sued for slander or libel for defamatory statements in papers filed in a judicial proceeding or before bodies whose duties are *quasi* judicial, boards or commissions. *Krumin v. Bruknes,* 255 Ill. App. 503. But this rule of law obviously does not render one immune who has made such defamatory statements; he may be dealt with under the criminal law. Vol. 1, Cooley on Torts, 3rd Ed., p. 425.

In the *Krumin* case an action was brought seeking damages for an alleged libel, the basis of which was the alleged defamatory statements contained in affidavits· concerning the plaintiff which were filed with the Naturalization Bureau, plaintiff having applied for citizenship, and this court held that such statements were absolutely privileged, and that an action for libel could not be maintained; in discussing the question we said (p. 510): "There are many cases holding that defamatory statements in papers filed in a judicial proceeding are absolutely privileged. *Strauss v. Meyer,* 48 Ill. 385; *Jones v. Brownlee,* 161 Mo. 258; *Michael v. Matson,* 81 Kan. 360; *Shinglemeyer v. Wright,* 124 Mich. 230; *Rall v. Donnelly,* 56 Ill. App. 425; *Beggs v. McCrea,* 70 N. Y. S. 864."

Judge Cooley in his work, on the page cited, said: "Cases absolutely privileged, so that no action [for slander or libel] will lie, even though it be averred that the injurious publication was both false and malicious. . . .

"Of the cases absolutely protected, that of the witness in judicial proceedings has already been alluded to. No action will lie against him at the suit of the party injured by his. false testimony, even though

malice be charged; but he must be left to be dealt with by the criminal law. The rule assumes, however, that he will not wander from the case in giving his testimony, and abuse his privilege by testifying to that which is impertinent and immaterial, and which has not been called out by questions of counsel.''

So too, it was held that a letter to the railroad commission of Texas in answer to a complaint filed before it, which letter contained an alleged libel, was absolutely privileged. The commission was created by the State legislature and the statute provided for a filing of complaints before the commission, which was authorized to summon witnesses and compel their attendance.

And in *Independent Life Ins. Co. v. Rodgers,* 165 Tenn. 447, the court said (p. 455): ''Absolute privilege, as distinguished from qualified privilege, has been extended to many inquiries that are not conducted before courts of justice or courts of record . . . to proceedings before the interstate commerce commission.''

The creation of the board of election commissioners is authorized by statute. (Ch. 46, ¶ 255, Ill. State Bar Stats. 1935.) ''In every city, village and incorporated town so adopting this act there shall be created a board of election commissioners, which shall be composed of three members, . . . and shall be appointed by the county court . . . such appointment shall be entered of record in such court, and when qualified such commissioner shall be an officer of such court.'' Then follow other sections specifying the duties of the commissioners. Section 198 empowers the board to hear evidence under oath regarding residents of lodging houses. By other sections of the act the election commissioners are authorized to hear objections filed to nominating petitions, and the commission is authorized to administer oaths, subpoena and examine witnesses, etc., all of which, we think, make the board of

election commissioners a *quasi* judicial body. In view of the statute we hold that objections filed to the aldermanic petitions mentioned in plaintiff's complaint rendered the persons filing them, so long as the statements made in the objections are relevant, immune from a suit for an alleged libel.

We are further of the opinion that the eight alleged statements or affidavits which plaintiff contends are libelous are also privileged because they were to be used in support of the objections filed before the election commissioners. If persons appeared before the commission on the hearing of the objections and testified to the facts set up in the affidavits, although the testimony might be false it would be privileged, and as stated by Judge Cooley in his work on Torts, "No action will lie against him at the suit of the party injured by his false testimony, even though malice be charged; but he must be left to be dealt with by the criminal law." If such sworn testimony is privileged, with greater reason ought the affidavit be privileged.

Furthermore, in none of the alleged affidavits is there any reference made to plaintiff, either directly or by implication. Nor is there any language used from which it might be inferred that he was being spoken of in a derogatory manner. The notaries public before whom the persons making the alleged affidavits appeared, even if they read the affidavits, would have no intimation that plaintiff was being criticized. And the allegation of the complaint that plaintiff was, by innuendo, charged with making a false affidavit, is not warranted by the language of the affidavits. The innuendo cannot enlarge or restrict the natural meaning of the words used in the affidavit. 25 Cyc., p. 449. It is there said: "The office of the innuendo is to connect the defamatory matter with other facts and circumstances sufficiently expressed before, for the purpose of showing the meaning and application of the charge.

"The innuendo is only explanatory of the words to which it is attached and it cannot enlarge or restrict the natural meaning of the words, introduce new matter, or make certain that which was uncertain, except insofar as it connects the words published with the extrinsic or explanatory circumstances alleged in the inducement. If the publication is not actionable *per se,* it cannot be made so by innuendo."

Plaintiff also contends that the court should not have heard defendants' motion to strike their complaint over plaintiff's objection during the summer when the court was in recess and hearing only matters of emergency; that there was no emergency in hearing defendants' motion to strike. The record discloses that plaintiff was taking depositions before a master who was sitting as an examiner, and that he insisted in going ahead with the examination of a great many witnesses. Under the chancery practice complainant was entitled to take the depositions of witnesses (sec. 24, ch. 51, Cahill's 1933 Stats.) before an issue was formed. *Schmidt v. Cooper,* 195 Ill. App. 531, affirmed in 274 Ill. 243. This same procedure is now available in an action at law. (Supreme Court Rule 19, par. 242, ch. 110, Ill. State Bar Stats. 1935.)

In the *Schmidt* case a bill was filed and depositions were being taken before the issue was made up. A witness refused to testify before a master who was acting as a commissioner and he was adjudged by the court to be in contempt. He appealed to this court and the judgment was affirmed. We there said (p. 535) : "No point is made that the bill does not state a cause of action."

In the instant case defendants challenged the sufficiency of the complaint and moved that it be stricken. In view of the fact that plaintiff was insisting on continuing to take depositions during the summer recess of the court, while defendants were insisting that the complaint did not state a cause of action, we think it

was more of an emergency for the court to dispose of the motion to strike than it was for plaintiff to continue during the recess to take depositions, and since we hold that the complaint was properly stricken, it is clear that the action of the trial court was entirely proper.

For the reasons stated the judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

McSurely, P. J., and Matchett, J., concur.