MICHAEL D. RICHARDSON, Plaintiff-Appellant, *v.* LOLA DUNBAR *et al.*, Defendants-Appellees.

Third District    No. 80-255

Opinion filed April 3, 1981.—Rehearing denied May 21, 1981.

Michael D. Richardson, of Galesburg, *pro se*.

Dwayne I. Morrison, of Barash & Stoerzbach, of Galesburg, for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

The plaintiff Michael D. Richardson appeals from the dismissal of his second amended complaint by the Circuit Court of Knox County. Count I of the complaint sought recovery for defamatory statements allegedly made by defendant Lola Dunbar at a meeting of the Knoxville city police committee. Defendant Donald Moffitt is chairman of the police committee and defendant Dean Whitworth is a member of that committee, as well as mayor of the City of Knoxville. Count II of the complaint sought recovery against Moffitt and Whitworth on the basis of alleged breaches of their duties, established by the Knoxville City Code, to discharge their municipal offices in good faith. The circuit court, on motions to dismiss by the defendants, dismissed both counts of the complaint, under section 48 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 48) for failure to state a claim upon which relief may be granted. Richardson, on appeal, alleges error in the dismissal of his complaint, arguing that sufficient causes of action were stated in each count of the complaint.

The standards to be applied when reviewing a motion to dismiss are well established. As noted concisely in *Brooks v. Village of Wilmette* (1979), 72 Ill. App. 3d 753, 756, 391 N.E.2d 133:

"A motion to dismiss admits such allegations as are well pleaded together with all reasonable inferences which could be drawn from

the facts. [Citations.] Upon review, a court must determine whether the allegations of the complaint when interpreted in the light most favorable to the plaintiff are sufficient to set forth a cause of action upon which relief may be granted. [Citations.] A complaint will not be dismissed for failure to state a cause of action unless it clearly appears that no set of facts could be proved under the pleadings which would entitle the plaintiff to relief. [Citations.]"

With these rules in mind, we turn to the allegations contained in the second amended complaint filed by Richardson in this action.

Count I states that plaintiff Richardson made sworn complaint to the Knoxville City Council about certain actions by the police chief of Knoxville. As a result of Richardson's complaint, defendant Whitworth, the mayor of Knoxville, ordered defendant Moffitt, chairman of the Knoxville City Council police committee, to conduct an investigation into the complaint. It is further alleged in the pleadings that Whitworth and Moffitt held a meeting of the police committee on August 8, 1978. It is also alleged that during the meeting, Lola Dunbar, defendant in this action, stated that plaintiff Richardson had grabbed the police chief by the shoulder. Richardson's complaint further states that the implication of Dunbar's remarks is that he violated the aggravated-battery statute by striking the police chief. It is then stated that Dunbar's statement was made in bad faith, that it was false and knowingly false, that it was made with the intent of harming Richardson, and that it was thereby defamatory.

The complaint also alleges that the statement by Dunbar was made with knowledge that excessive publication would occur and that such excessive publication did occur. A story about the Dunbar statement was on the front page of the following day's Galesburg Register-Mail. The first count of the complaint concludes with an allegation of harm to Richardson from the publication and an allegation of his own reasonable conduct in the matter. It is obvious from the factual allegations contained in count I that Richardson seeks recovery against Dunbar for allegedly defamatory statements made by her during a meeting of the police committee. The trial court, in its order of dismissal, found that the complaint's count I was insufficient to state a claim upon which relief could be granted. The basis for that conclusion was the court's finding that the meeting of the police committee was a quasi-judicial proceeding.

■■ It is the established law of Illinois that statements made during quasi-judicial proceedings are absolutely privileged. (*Parker v. Kirkland* (1939), 298 Ill. App. 340, 346-52, 18 N.E.2d 709 (Cook County Board of Appeals); *Kimball v. Ryan* (1936), 283 Ill. App. 456 (Chicago Board of Election Commissioners); *Krumin v. Bruknes* (1930), 255 Ill. App. 503 (Naturali-

zation Bureau of the Department of Labor).) The privilege adhering to testimony given in quasi-judicial proceedings encompasses testimony given before administrative agencies or other governmental bodies when such agencies or bodies are performing a judicial function. (298 Ill. App. 340, 346; Restatement (Second) of Torts §§585, 588 (1977).) Commentators include within the quasi-judicial group proceedings before licensing boards or agencies and proceedings to remove or discipline public officers or employees. (See, *e.g.*, 1 Hanson, Libel and Related Torts §109.) While no conclusive agreement has yet been reached upon a definition of "quasi-judicial proceeding," the court in *Parker v. Kirkland* (1939), 298 Ill. App. 340, 346, indicated that historically the privilege had attached to all proceedings before any tribunal which exercises "judicial functions, that is to say has power to determine the legal rights and to effect the status of the parties who appear before it." The court in that case found that the County Board of Appeals was quasi-judicial in that it had a duty to review an assessment, upon the filing of a complaint. Further, the board, in filling that duty, had the power, by statute, to summon witnesses and administer oaths. It also entered orders of record with supporting reasons in writing. (298 Ill. App. 340, 348.) In *Kimball v. Ryan* the court found that the Chicago Board of Election Commissioners was a quasi-judicial body, relying for that finding upon the fact that the board was created by statute, empowered to hear evidence under oath, and empowered to subpoena witnesses. (283 Ill. App. 456, 464-65.) Whether any given proceeding by an administrative or executive body is quasi-judicial, so that a privilege applies, depends, of course, upon the circumstances of the case. Specifically, it depends upon the powers and duties of the body conducting the proceeding and upon the nature of the proceedings themselves. A committee or board with quasi-judicial powers is not, as a matter of law, a quasi-judicial body at all times. At those times when it is not performing its quasi-judicial functions, or at those times when, purporting to perform those functions, it nevertheless fails to follow judicial procedures, it can be said that it is not acting as a quasi-judicial body.

In the case at bar we are confronted with contrary allegations concerning the functions of the Knoxville police committee and its proceedings of August 8, 1978. In its brief to this court, the defense states that the police committee "handles" rule setting for the police department, investigation of police improprieties, and the hiring and firing of police personnel. The defense brief also states that the committee takes complaints about police misconduct and conducts hearings on such complaints. The plaintiff Richardson, on the other hand, states in his brief that the committee employs no judicial procedures and that it makes no final determination. It is also stated that the committee has no power to

administer oaths or to subpoena witnesses and that it is merely an investigative subcommittee of the Knoxville City Council. The August 8, 1978, session of the police committee is referred to as both a hearing and a meeting.

The problem with all of these allegations concerning the nature of the police committee and its activity on the night of August 8, 1978, is that they are made by the parties in briefs to this court, without support in the record. The only mention of the police committee and its activity on August 8, 1978, in the record is that contained in the allegations of the complaint. No answer has been filed at this time. In the complaint it is alleged that the police committee was ordered to conduct a full investigation into Richardson's complaint against the police chief. It is also stated that the police committee held a meeting on August 8, 1978, and heard statements from various people, including defendant Dunbar. These scanty allegations of fact, which must be taken as true at this time, are insufficient to establish that the meeting on August 8, 1978, was a quasi-judicial proceeding before the police committee. There is nothing stated with respect to the powers, authority, or procedures of the police committee, either generally or specific to the night of August 8, 1978.

The defense has filed no answer, nor has it submitted other documents setting forth factual statements indicating the nature of the proceeding that was conducted by the police committee on August 8, 1978. The court was without sufficient basis in the record before it to conclude that the police committee was acting in a quasi-judicial capacity on the night of August 8, 1978. The only affidavit filed in the matter is one filed by plaintiff Richardson, in which a transcript of the first part of the meeting on August 8, 1978, is set forth. It was during the first part of the meeting that the allegedly defamatory remark by Dunbar was made. There is little in the transcript to support the court's conclusion that the police committee was performing a quasi-judicial function on the night of August 8, 1978, when Dunbar's statement was made. It appears from that part of the transcript in the record, which may not be complete, that the police committee meeting was an informal, sometimes light-hearted affair, with Whitworth and Moffitt discussing the incident under consideration with a variety of people, including Dunbar, in the audience. There is no indication that Dunbar was called as a witness or that she was under any oath when she made her statement. Nor is there indication in the record at this time that the committee, on August 8, 1978, employed any judicial procedures or operated under any judicial or quasi-judicial structure when holding the meeting to allegedly investigate the complaint against Richardson.

In conclusion, the record which was before the court on this motion to dismiss is insufficient to support the court's conclusion that the police

committee was acting as a quasi-judicial body on the night of August 8, 1978, at the meeting wherein the allegedly defamatory statements were made. It may be that with further factual development the defense would be able to demonstrate the quasi-judicial nature of the proceedings that night.

While rejecting the trial court's stated basis for dismissing count I against Lola Dunbar, we nevertheless affirm that dismissal on different grounds. We find that the count in defamation is insufficient substantively, as a matter of law, in that the defamatory construction placed upon the actual words of Dunbar is unreasonable. Furthermore, the count in defamation is insufficient, as a matter of law, for failure to allege special damages.

■■ Affirmance of the dismissal of count I is based upon our conclusion that the construction placed upon Dunbar's alleged statement by plaintiff Richardson is an unreasonable one, under all the circumstances. Dunbar's statement, as set forth in the complaint, is that "he grabbed Danny by the shoulder and tried to turn him around." We find it unreasonable to conclude, as plaintiff asserts, that Dunbar, by that statement, intended to imply that Richardson had committed aggravated battery. Such a construction assumes a familiarity with the criminal statutes which Dunbar is not alleged to have possessed. We find that plaintiff's construction of Dunbar's statement strays too far from any reasonable understanding of the meaning of the words she is alleged to have used. It is established that a motion to dismiss will be sustained if the words claimed to be defamatory are not reasonably or fairly capable of the construction placed upon them by the plaintiff. Also, it is for the courts to decide whether the allegedly defamatory statement was reasonably capable of the meaning ascribed to it in the innuendo. (*Kulesza v. Chicago Daily News* (1941), 311 Ill. App. 117, 125, 35 N.E.2d 517.) We find that the construction placed upon Dunbar's words by the plaintiff is unreasonable and that his complaint was insufficient to state a claim for defamation.

■■■ Turning next to the deficiencies of the complaint with respect to allegations of damages, we note that there are four categories of defamatory statements, whether slander or libel, which are considered defamatory *per se*, wherein damage is presumed and no allegations or proof of special damages is necessary. (*Bruck v. Cincotta* (1977), 56 Ill. App. 3d 260, 371 N.E.2d 874; *Kirk v. Village of Hillcrest* (1975), 31 Ill. App. 3d 1063, 335 N.E.2d 535.) These include the speaking of words which impute (1) the commission of a criminal offense or (2) an infection with a communicable disease which, if true, would exclude one from society, or (3) inability to perform or want of integrity in the discharge of duties of office or employment or (4) are such as to prejudice a particular person in his profession or trade. (31 Ill. App. 3d 1063, 1065.) If an allegedly

defamatory statement does not fall into one of the four categories, then it is not considered defamatory *per se*, but rather defamatory *per quod*, that is, with explanation. In actions for defamation *per quod*, special damages must be alleged with particularity, and general allegations as to damages are insufficient. 56 Ill. App. 3d 260, 266; *Moricoli v. Schwartz* (1977), 46 Ill. App. 3d 481, 361 N.E.2d 74.

In the instant case, the allegedly defamatory statement, "he grabbed Danny by the shoulder and tried to turn him around," is clearly not defamatory *per se*. Richardson argues that the statement implies commission of the offense of aggravated battery, since Danny refers to the police chief. As noted in *Moricoli v. Schwartz* (1977), 46 Ill. App. 3d 481, 484:

> "However, where words do not of themselves import commission of a crime, they may not be so construed by reference to antecedent circumstances or words not part of the language complained of and thus, are not slanderous *per se*. [Citation.]"

The allegedly defamatory statement does not import commission of a crime in the language used, and requires explanation of surrounding circumstances to even suggest the meaning alleged to it. That explanation is necessary is evident from the fact that plaintiff Richardson, in the following paragraphs of the complaint, alleges that the Danny referred to is the police chief, that striking a police officer is aggravated battery, and that Dunbar's statement implied that Richardson committed aggravated battery. Thus, it is clearly a case wherein plaintiff attempts to base a claim upon defamation *per quod* and, therefore, it is necessary for recovery that plaintiff allege and prove special damages with particularity. Here, the only allegation concerning damages was that excessive publication of the statement in the newpaper harmed Richardson. Actual damages in the amount of $1 and punitive damages of $100,000 were prayed for to the court. Based upon the lack of allegations of special damages, we affirm the dismissal of count I by the trial court.

■■ We turn next to count II of Richardson's complaint, that based upon Whitworth and Moffitt's alleged negligence in the way they handled the police committee meeting. We affirm the dismissal of count II, finding no sufficient allegation of a duty imposed upon Whitworth and Moffitt which they breached. The duty alleged in the second count of the amended complaint is the duty owed by both men, under section 2—56 of the Knoxville City Code, to discharge their municipal offices in good faith. It is clearly established that the violation of a statute or ordinance may be the basis for a negligence action. That is the case when it is shown that the statute or ordinance prescribes a duty for the protection and safety of persons or property (*Shehy v. Bober* (1979), 78 Ill. App. 3d 1061, 1067, 398 N.E.2d 80) and that the plaintiff suffered the kind of harm that the statute or ordinance was intended to prevent (*Galayada v. Penman*

(1980), 80 Ill. App. 3d 423, 428-29, 399 N.E.2d 656.) There is no indication or allegation that the city ordinance set forth in the complaint was one designed for the protection of human life or property or that plaintiff Richardson suffered the kind of harm the ordinance was intended to protect against. Without a duty arising from a health or safety ordinance or statute, a complaint in negligence must allege sufficient facts showing that the harm complained of was a reasonably foreseeable consequence of the action by the defendants. As stated by the court in *Ortiz v. City of Chicago* (1979), 79 Ill. App. 3d 902, 907, 398 N.E.2d 1007:

> "The supreme court has made it clear that in determining whether a legal duty exists, the occurrence must have been reasonably foreseeable; more than a mere possibility of occurrence is required. [Citation.] 'No man can be expected to guard against harm from events which are not reasonably to be anticipated at all, or are so unlikely to occur that the risk, although recognizable, would commonly be disregarded.' (Prosser, *Torts* §31, at 146 (4th ed. 1971).) The existence of a legal duty is not dependent on the factor of foreseeability alone but includes consideration of public policy and social requirements. [Citations.]"

The allegedly negligent action and conduct by the defendants Whitworth and Moffitt is their holding the meeting of the police committee and their permitting press coverage of the meeting. There is no allegation of conspiracy to defame Richardson, nor is there any allegation that the defendants had prior knowledge that Dunbar was going to make the statements she made at the meeting. Thus, there is nothing in the record, either in the complaint or the affidavit filed in support, to indicate that Dunbar's utterance of the remark was a reasonably foreseeable consequence of holding the meeting and permitting the presence of the press. We are unable to find any unreasonable risk to the plaintiff Richardson in the defendants' holding of the meeting and permitting press coverage. The possibility of someone making defamatory utterances would seem to be present at all public meetings, and there is nothing indicating anything more than a possibility was present in this case.

As to the public policy considerations, it is to be noted that it is the policy in Illinois to encourage open and public meetings by governmental bodies. (Ill. Rev. Stat. 1979, ch. 102, par. 41 *et seq.* (Open Meetings Act).) There is no allegation in the complaint that the defendants were under a duty to hold a closed meeting, nor is such a duty imposed by the statute. (Ill. Rev. Stat. 1979, ch. 102, par. 42.) Section 2 (par. 42) permits a governmental body to hold a closed meeting to hear testimony on a complaint lodged against an employee or officer, but it does not mandate a closed meeting. Nor is there in the complaint any indication or allegation as to how the defendants could have guarded against the

utterance of the allegedly defamatory statements made at the meeting. In summary, the second amended complaint, in its count II, failed to allege a sufficient duty that was breached by defendants, which allegation was necessary to support an action for negligence. The trial court did not err in dismissing count II for failure to state a claim upon which relief could be granted.

Accordingly, the judgment and decision of the Circuit Court of Knox County is affirmed.

Affirmed.

BARRY and HEIPLE, JJ., concur.