**Jack L. WALKER, Plaintiff,**

v.

**Connor GIBSON, Jr., Defendant.**

**No. 84 C 2218.**

United States District Court,
N.D. Illinois, E.D.

June 28, 1985.

Chanon Williams, Chicago, Ill., for plaintiff.

Ann L. Wallace, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This action against a federal official is before the court on the motion to dismiss or for summary judgment of defendant Connor Gibson, Jr. The motions are granted in part, and this action is therefore dismissed. Fed.R.Civ.P. 12(b)(6), 56.

On February 14, 1985, the court dismissed count III of Walker's three-count complaint for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). (The factual allegations of the complaint are recited in that opinion and will be not repeated here.) However, the court declined to dismiss Walker's first and second counts, which contained allegations of defamation and tortious interference with contract. In denying the motion to dismiss counts I and II, the court accepted all of Walker's allegations as true. Moreover, the court was bound to construe liberally Walker's allegations, which included claims of retaliation and continuous harassment by Gibson. The sufficiency of these counts is now before the court on a motion for summary judgment. Thus, while the court draws all reasonable inferences from the evidence in favor of Walker, vague and unsupported allegations cannot create a genuine issue of material fact. Rather, if Gibson adduces evidence tending to show that no dispute of material fact exists that he is entitled to judgment in his favor, Walker must present evidence tending to show that such a dispute of fact does exist. Fed.R.Civ.P. 56(e). Moreover, Walker does not argue that he needs more time to gather sufficient evidence with which to oppose the present motion. Fed.R.Civ.P. 56(f). With these principles in mind, the court will discuss the merits of Gibson's motion.

### Count I

Count I of the First Amended Complaint is one for defamation. In it, Walker alleges that:

Beginning on or about September, 1981, Defendant commenced a malicious cam-

paign of false and defamatory statements regarding Plaintiff's conduct with fellow employees, Plaintiff's job performance, and Plaintiff's hygiene. Defendants' actions were of a continuing nature and continued unabated up and through May 17, 1983 in the form of Defendant's false and defamatory statements regarding Plaintiff made at staff meetings and during regular conditions to Plaintiff's fellow employees and Plaintiff's superiors at Fort Sheridan, Illinois.

(First Amended Complaint ¶ 6.)

In his motion to dismiss, Gibson argued that the Illinois one-year limitations period for defamation actions was exceeded by Walker's filing of the complaint on February 8, 1984. (The parties agree that counts I and II are governed by Illinois law and that in Illinois, the statute of limitations for defamation is one year. *Ill.Rev.Stat.*, ch. 110 ¶ 13–201.) Because Walker alleged a continuing pattern of defamation through May 17, 1983, however, the court declined to decide this affirmative defense on a motion to dismiss. Gibson now raises the limitations defense in the present motion for summary judgment, arguing that the undisputed facts show the period was exceeded in this case. Walker has been given the opportunity to present evidence tending to show the period was not exceeded or that it should be tolled for equitable reasons.

In Walker's responses to Gibson's interrogatories, Walker set forth the specific defamatory statements of which he complains. These include February 11 and April 16, 1982 statements that Walker sexually harassed a fellow employee; February 11, April 19, and June 4, 1982 statements that Walker had body odor; and October 26 and November 1, 1982 statements that Walker had used a superior's chauffeur. (Plaintiff's Answers to Defendant's First Set of Interrogatories, # 3.) Walker further answered

On May 17, 1983 Gibson repeated all charges in front of Rosemary Kegley, Robert Marshall, Norbert Adams, Jay Carley, Ken Denton and the Hearing Officer at Fort Sheridan.

(*Id.*)

Gibson is correct that all of the statements except those made on May 17, 1983 occurred before February 8, 1983 (one year before the filing of the complaint on February 8, 1984.) Gibson argues further that the May 17, 1983 statements are protected by absolute judicial immunity, and hence cannot be the basis for a timely defamation claim.

■ Although Walker's interrogatory answer is unclear as to the context of the May 17 statements, Walker does not dispute Gibson's characterization of those statements as made by him to members of a grievance committee at a hearing on charges brought against him by Walker. The parties agree that in Illinois, absolute immunity attaches to statements made in connection with judicial proceedings. The Illinois Appellate Court in *McCutcheon v. Moran*, 99 Ill.App.3d 421, 54 Ill.Dec. 913, 425 N.E.2d 1130 (1st Dist.1981), explained this rule as follows:

> It has long been the recognized rule of law that whatever is said or written in a legal proceeding which is pertinent and material to the matters in controversy is privileged and no action of slander or libel can be maintained upon it. [Citations omitted.] This privilege is no longer limited to formal pleadings and in-court communications, but includes any communication pertinent to the pending litigation. [Citation omitted.]
>
> \*　\*　\*　\*　\*　\*
>
> The judicial proceeding to which an absolute privilege attaches .... extends to administrative proceedings insofar as they have powers of discretion in applying the law to the facts and which can be regarded as judicial in nature.

54 Ill.Dec. at 96, 425 N.E.2d at 1133. *See Restatement (Second) Torts* § 585 (comment b) (1971) and cases collected at *Restatement (Second) Torts Appendix* § 585 (comment b) (1981 & Supp.1984).

Recognizing that the privilege applies to "quasi-judicial proceedings [before] administrative agencies or other governmental bodies when such agencies or bodies are performing a judicial function," the Court in *Richardson v. Dunbar*, 95 Ill.App.3d 254, 50 Ill.Dec. 756, 759, 419 N.E.2d 1205, 1208 (3d Dist.1981), listed functions that had been found to be judicial in nature. Among these are the jurisdiction to review the allegations of a complaint, the power to summon witnesses and administer oaths, and the obligation to enter orders and written findings. *Id.* *Parker v. Kirkland*, 298 Ill.App. 340, 18 N.E.2d 709 (1st Dist.1939), contains a long analysis of the types of proceedings in which the testimonial privilege applies. 298 Ill.App. at 346–52, 18 N.E.2d 709. That Court cited authority for the proposition that the privilege attaches even if the relevant tribunal does not have all the powers of an "ordinary court": "[T]he proceedings will still be absolutely privileged although the tribunal cannot compel the attendance of witnesses, or has no power to administer an oath, provided it can discharge its judicial duties without such powers." 298 Ill.App. at 346, 18 N.E.2d 709.

Gibson argues that the May 17, 1983 hearing falls within the category of proceedings protected by absolute immunity. Walker does not disagree with Gibson's description of those proceedings. Specifically, Gibson points out that the proceedings were convened pursuant to 5 C.F.R. 771, with Examiner John M. Stewart, of the United States Army Civilian Appellate Review Agency, as the presiding officer. The hearing was conducted after denial of Walker's grievance on December 20, 1982 by Earl M. Greene, Deputy Installation Commander of Fort Sheridan. At the May 17 hearing, Stewart administered oaths, listened to numerous witnesses, examined 27 exhibits, and issued a report and recommendation of 31 pages. He had the discretion to review the evidence and examine the witnesses, reach a conclusion, and prepare a report. *See* 5 C.F.R. § 771.302. According to Gibson, his statements were well within the proper scope of Stewart's inquiry (which concerned Gibson's own alleged wrongdoing against Walker).

Walker does not argue that Gibson's statements were collateral to the May 17 hearing. Rather, he contends that the hearing was not judicial in nature, quoting language from W. Prosser, *Law of Torts* 780 (1971), for the proposition that the mere fact that an officer must make a factfinding does not render that function judicial in nature. Walker also points to language in Stewart's Report and Recommendation characterizing the May 17 hearing as a "group conference."

The court finds Walker's position without merit. The hearing included the elements described above as indicative of judicial hearings. Moreover, the hearing as a whole was judicial in nature, since it implicated the "power to determine the legal rights and to effect [sic] the status of the parties who appear before it." *Parker*, 298 Ill.App. at 346, 18 N.E.2d 709 (cited in *Richardson*, 500 Ill.Dec. at 759, 419 N.E.2d at 1208). *See generally Restatement (Second) Torts, supra,* at § 585 (comment c). Walker does not dispute that the hearing officer had the discretion to determine facts and apply them to the law regarding Walker's grievance.

Moreover, the policies behind the doctrine of judicial immunity are fully applicable to the May 17 hearing. Such policies include those directed to ensuring that witnesses are free from "intimidation by the possibility of civil liability for what they say" and that parties have free access to available judicial proceedings. W. Prosser, *supra,* at 778. *See also Restatement (Second) Torts, supra,* at §§ 587–88. It is well within the spirit of this doctrine that Gibson be able to testify about Walker's job performance without fear of liability in a proceeding in which Gibson could be, and in fact was, subject to disciplinary action.

Because the court finds that Gibson is protected from liability for his statements of May 17, 1983, Walker's first count must be dismissed under the applicable statute of limitations. Although Walker alleges a

continuing course of defamatory statements through May 17, 1983, the last actionable statement occurred on November 1, 1982. This is more than one year before the filing of this suit in February 1984. Moreover, Walker has made no argument that the period should be tolled. Gibson's motion for summary judgment on count I is therefore granted.

### Count II

In count II, Walker realleges the allegations of count I, and adds claims of harassment and retaliation by Gibson. Specifically, Walker complains that from September 1981 to May 17, 1983,

> Defendant harassed and intimidated Plaintiff by constantly and undeservedly criticizing the Plaintiff's work, requiring unwarranted fitness for duty examinations, and threatening Plaintiff with reprisals if Plaintiff would complain to the Inspector General, the Office of Equal Employment Opportunity, or the Plaintiff's Congressman, regarding the harassing and intimidating treatment of Plaintiff by Defendant. Defendant's conduct interfered with the employment relationship between the Plaintiff and the Department of the Army.

(First Amended Complaint ¶ 13.) Walker makes further allegations of such harassment, and concludes that he thereby "sustained irreparable harm to his relationship with his employer...." (*Id.* at ¶ 16.)

Since this claim explicitly adds no new allegations concerning defamatory statements by Gibson regarding Walker, the court construed it as one for interference with contractual relations. This characterization is supported by Gibson's allegations of interference with his employment relationship with the United States Army. Moreover, Walker agrees with this construction in his responding memorandum. (Plaintiff's Response, filed June 11, 1985, at 4.) Gibson, however, objects to this characterization, contending that in fact, the allegations are for "defamation per se" and are barred by the one-year limitations period applicable to such an action.

The court's duty on a motion to dismiss or for summary judgment is to examine the allegations or evidence to determine whether under any theory, plaintiff has alleged or proven a claim upon which relief may be granted. Moreover, the court will not force a plaintiff to pursue a theory of relief which plaintiff has disavowed. Walker has disavowed any attempt to state a claim for defamation in count II, and the court will therefore examine the allegations under Walker's proposed theory of interference with contractual relations. Of course, upon final judgment, Walker will be barred, under doctrines of claim preclusion, from asserting a claim for defamation stemming solely from the same facts alleged in count II.

Gibson correctly states the Illinois law of tortious interference with contractual relations. The elements of the tort include:

> (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages.

*Belden Corporation v. Internorth, Inc.,* 90 Ill.App.3d 547, 45 Ill.Dec. 765, 768, 413 N.E.2d 98, 101 (1st Dist.1980). A breach of contract by the third party is not essential to the claim. In *Hannigan v. Sears, Roebuck and Co.,* 410 F.2d 285, 290–91 (7th Cir.), *cert. denied,* 396 U.S. 902, 90 S.Ct. 214, 24 L.Ed.2d 17 (1969), the Seventh Circuit found that defendant's wrongful inducement of an involuntary modification of a contract by a third party could be tortious. The Court explained:

> To us, there is no legally significant distinction between unabashed third party conduct which induces one party outrightly to repudiate and breach its contract with another and subtle third party conduct which achieves essentially the same result through the equally questionable means of coercing a contractual modification. Both approaches are

equally tortious in nature and similarly interfere with the contractual relationships of others.

410 F.2d at 291 (followed by *Getschow v. Commonwealth Edison Co.*, 111 Ill.App.3d 522, 444 N.E.2d 579, 584 (1st Dist.1982), *aff'd in part, rev'd in part on other grounds*, 99 Ill.2d 528, 77 Ill.Dec. 528, 459 N.E.2d 1332 (1984)).

Gibson points out, and Walker does not disagree, that since September 1981, Walker was not fired, suspended, or denied a promotion. (Walker, moreover, makes no such allegations.) Gibson concludes that, assuming Walker can show the other elements of the tort, his conduct did not cause a breach by Walker's employer of the employment contract. Walker does not address this argument, but merely states that because the limitations period for this tort is longer than the one-year period for defamation, the claim cannot be dismissed on limitations grounds.

The court finds Gibson's argument persuasive. Walker's allegations suggest that Gibson's retaliatory conduct interfered with his employment contract, but Walker never once supplies specifics on how that interference manifested itself. The employment contract is not described, so the court has no way of knowing whether Walker had any contractual employment rights at all. (Walker had some statutory rights, but he has never argued that he has an implied claim for damages under such statutes or regulations.) Without any evidence of termination, suspension, or denial of promotion, the court cannot draw the inference that Gibson's conduct induced the United States Army effectively to breach one of these unnamed contractual rights. Walker's second count, therefore, fails to state a claim on which relief may be granted. (The court notes that Walker produces no evidence suggesting that he could properly allege such a claim.) Count II is therefore dismissed. Fed.R.Civ.P. 12(b)(6).

The court's rulings on counts I and II make unnecessary a ruling on the government's claims regarding sovereign immunity and lack of damages.

## Conclusion

Defendant's motion for summary judgment is granted as to count I. Defendant's motion to dismiss is granted as to count II. The action is dismissed, and judgment entered in favor of defendant Connor Gibson.

It is so ordered.