MICHAEL C. ANTONELLI, Plaintiff-Appellant, *v.* FIELD ENTER-
PRISES, INC., Defendant-Appellee.

First District (2nd Division)    No. 82—601

Opinion filed May 31, 1983.

Michael E. Antonelli, of Chicago, for appellant, *pro se*.

A. Daniel Feldman, Steven R. Gilford, and Michael Goldfein, all of
Isham, Lincoln & Beale, of Chicago, for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff appeals from the dismissal of his *pro se* complaint in
which he alleged that defendant Field Enterprises, Inc. (Field), had
defamed him by referring to him as a "mobster." Plaintiff alleged
that a June 17, 1980, article printed by the Field-owned newspaper,
the Chicago Sun Times, captioned "Mobster v. Media," knowingly
and falsely stigmatized him as a mobster; that the article was
printed in reckless disregard of its truth; and that defendant was
negligent for having failed to verify that the statements made in the
article were accurate. Plaintiff asserted further that he was "a per-
son of good name, sound reputation and character ***" before the
article was printed and circulated; and that the article damaged his
reputation and standing in the community and caused him severe

emotional distress.

Field moved to dismiss the complaint pursuant to sections 45 and 48 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, pars. 45, 48) now sections 2—615 and 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, pars. 2—615, 2—619), for failure to state a claim and because the claim was barred by the applicable one-year statute of limitations governing libel actions. (Ill. Rev. Stat. 1979, ch. 83, par. 14, now Ill. Rev. Stat. 1981, ch. 110, par. 13—201.) Plaintiff filed a memorandum in opposition to these motions; however, the motion to dismiss upon the merits of plaintiff's claim was allowed. The circuit court expressly declined to rule on the applicability of the statute of limitations.

The background facts of this case reveal that plaintiff was a convicted felon who, in 1980, was serving four years in the Federal penitentiary for possession of a stolen automobile, bank fraud, embezzlement, bombings of certain properties, and a series of auto thefts. While in the Federal penitentiary, State charges against him arose in Illinois, including a seven-count indictment for attempted murder, for which he was sentenced to serve 15 years, consecutively to the four being served. Federal charges also arose, including a three-count indictment for possession of a handgun with a silencer.

Plaintiff sought an injunction or "gag order" in the Federal district court while serving the four-year sentence in which he sought to minimize the effects of pretrial publicity and to prevent the dissemination of "undue infamous news reports" of his conviction for possession of a stolen car, bank fraud, embezzlement and the bombings, because such news threatened the fair trial of the then pending State charges for attempted murder and the new Federal charges of possession of a handgun and silencer. His petition for leave to proceed *in forma pauperis* in the district court was denied. His appeal to the Seventh Circuit Court of Appeals was also denied. He then filed a petition in the United States Supreme Court for a writ of *certiorari* to the Seventh Circuit (*certiorari* petition) in which he set forth the preceding facts of his convictions and pending charges in addition to his summary of new articles which he stated had characterized him as "an unsavory man and a 'hit man' for the alleged crime syndicate." The *certiorari* petition was made part of this record, having been filed by Field in support of its circuit court motions to dismiss.

The United States Supreme Court denied plaintiff's *certiorari* petition on June 16, 1980. (*Antonelli v. Tribune Newspaper* (1980), 447 U.S. 926, 65 L. Ed. 2d 1120, 100 S. Ct. 3022.) The next day,

June 17, 1980, the Chicago Sun Times reprinted an Associated Press account of the Supreme Court's denial of plaintiff's *certiorari* petition as follows:

## Mobster vs. media
# Court denies name blackout

WASHINGTON (AP)—The Supreme Court Monday rejected an unusual request from reputed mobster Michael Antonelli, who wanted to block Chicago's news media from mentioning his name again.

Antonelli claimed that his Italian surname and the news media's "imagination" had led to Chicago newspapers and broadcasters identifying him as a "mob figure" and "reputed hit man."

Antonelli has a long history of arrests and convictions. He was sentenced last year to 15 years in prison for the 1975 bombing of a tavern in suburban Lyons.

He sought a news blackout of his name to protect his rights in future trials—on state charges of murder and related federal charges of possessing a gun with a silencer.

Antonelli asked the court to prohibit the news media from mentioning his name "to minimize the effects of prejudicial pre-trial publicity."

Plaintiff thereafter filed his *pro se* complaint in the circuit court of Cook County charging that the foregoing publication defamed and slandered him by virtue of its references to him as a "mobster." He maintains that "there is a big difference in calling someone a 'litigant' or *convict* or something of that sort and calling him a MOBSTER." He argues that given the actual and obvious meaning of mobster, the article cannot be given an innocent construction because it imputes to him "an association and lifestyle which is untrue, and is libelous per se."

■ An exhaustive review of the law of defamation, particularly the innocent construction rule, was undertaken by our supreme court in *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 352, 442 N.E.2d 195. There the court concluded that:

"[A] written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted *** it cannot be actionable *per se*. This preliminary determination is properly a question of law to be resolved by the court in the first instance."

The strongest reason advanced in support of the rule is one particularly apt under the facts of this case: that the rule is in consonance with the constitutional interests of free speech and free press and encourages the robust discussion of daily affairs. (*Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 350; *Dauw v. Field Enterprises, Inc.* (1979), 78 Ill. App. 3d 67, 71-72, 397 N.E.2d 41, *appeal denied* (1980), 79 Ill. 2d 625.) Although application of the innocent construc-

tion rule to the facts of this case may be deemed somewhat fatuous, it is clear that the circuit court in the present case correctly determined as a matter of law that the words "mobster" and "reputed mobster" in the newspaper article did not defame plaintiff. However, in light of his record of law breaking and convictions set forth in his own *certiorari* petition, the denial of which was the subject matter of the story, it is clear that the article was nonactionable *per se*.

Generally, a headline and the news report to which it refers must be considered as one document in analyzing whether or not the words therein contained are libelous under the innocent construction rule. (*Dauw v. Field Enterprises, Inc.* (1979), 78 Ill. App. 3d 67, 71-72; *Reed v. Albanese* (1966), 78 Ill. App. 2d 53, 223 N.E.2d 419.) In the case at bar, when the headline "Mobster v. Media" is considered together with the article appearing thereunder, it is clear that the reference to "mobster" was made in conjunction with the balance of the story in which plaintiff is referred to as a "reputed mobster," which, in turn, was related to his claim that he was unfairly identified as a "mob figure" and "reputed hit man" in news stories which he submitted in his *certiorari* petition to the United States Supreme Court. The term "reputed" means "supposed, thought, or reckoned ***." (Webster's Third New International Dictionary 1929 (1976).) "Supposed" in turn, is defined as "believed to be or accepted as such usu. on slight grounds or in error: erroneously imputed or ascribed ***." (Webster's Third New International Dictionary 2298 (1971).) Therefore, Field accurately depicted plaintiff as one about whom the word "mobster" had been "supposedly," perhaps "erroneously imputed," as the balance of the article reveals, thereby supporting the "innocent" construction of the word "mobster."

Furthermore, the term "mobster" is frequently found in newspaper and periodical accounts in the reportage of criminal activity. Webster defines "mobster" as "a member of a criminal gang." (Webster's Third New International Dictionary 1450 (1971).) The word "mobster" also is informally identified with the words "criminal, felon, crook, law breaker, scofflaw, and gangster." (Roget's International Thesaurus 986.10 (4th ed. 1977).) The words criminal, felon, crook, law breaker, scofflaw, gangster or mobster all connote the same type of person about whom those meanings may be ascribed; one who breaks or violates the law. Based upon the petition submitted by plaintiff to the United States Supreme Court outlining his record of breaking and violating the law, it can hardly be said that any one of the foregoing terms could not truthfully portray and characterize plaintiff's criminal past, including the word "mobster."

To hold otherwise in this context would lend credulity to the Dickensian Mr. Bumble's observation in Oliver Twist that "[i]f the law supposes that *** the law is a ass, a idiot."

■ Plaintiff complains that by the procedure followed in this case he was denied his day in court and contends that the circuit court abused its discretion in dismissing his suit, thereby preventing him from developing facts and issues in support of his case. Plaintiff was given the opportunity to respond to Field's motions to dismiss, however, and he did so in a four-page response. The circuit court's order of dismissal contains the specific statement that it took into account plaintiff's response to the motions. Dismissal of a complaint for just cause is within the discretion of the circuit court and the court may do so where, as here, the complaint fails to state a cause of action. (*Deasey v. City of Chicago* (1952), 412 Ill. 151, 105 N.E.2d 727.) This rule applies equally to actions for defamatory damages such as the case at bar. (*Trembois v. Standard Ry. Equipment Manufacturing Co.* (1949), 337 Ill. App. 35, 84 N.E.2d 862, *cert. denied* (1950), 338 U.S. 950, 94 L. Ed. 586, 70 S. Ct. 480; *Van Tuil v. Carroll* (1972), 3 Ill. App. 3d 869, 279 N.E.2d 361.) Under the foregoing authorities, no abuse of discretion by the circuit court can be discerned in consideration of the facts of this case.

For the reasons set forth above, no error in the circuit court's disposition of this cause appears and its dismissal of plaintiff's complaint must be affirmed.

Affirmed.

STAMOS and PERLIN, JJ., concur.