HARRIS TRUST AND SAVINGS BANK, Plaintiff-Appellant, v. JOHN G.
PHILLIPS *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 85—3168

Opinion filed March 31, 1987.

Richard A. Makarski, Stephen H. Pugh, Jr., and John Robert Weiss, all of Chapman & Cutler, of Chicago, for appellant.

John G. Phillips, of John G. Phillips, Ltd., of Chicago, *pro se* (Sidney Z. Karasik, of counsel), for appellees.

JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff, Harris Trust and Savings Bank (Harris Bank), appeals from the trial court's dismissal of its second amended complaint against defendants John G. Phillips and his law firm of John G. Phillips, Ltd. (Phillips). Count I alleges slander and count II alleges intentional interference with judicial process. Both counts were dismissed for failure to state a cause of action. The issues to be determined are: (1) whether the alleged defamations are actionable under the innocent construction rule; (2) whether, in the alternative, plaintiff alleged a cause of action for slander *per quod*; and (3) whether plaintiff alleged a cause of action for intentional interference with judicial process.

The origin of this lawsuit can be traced to a dispute between Harris Bank and Myrtle Seigel which culminated in the filing of two lawsuits in 1976 in the circuit court of Cook County: Harris v. Seigel, 76 CH 1405, and Seigel v. Harris, 76 L 4927.

The litigation centered on two trusts created by Mrs. Seigel's late husband. Harris served as a trustee and Mrs. Seigel was an income beneficiary. When she made a demand for distribution under one of the trusts, the bank refused and filed a complaint for instructions from the court with respect to further administration of the trust. Mrs. Seigel countered with an action against the bank alleging breach of fiduciary duty. The two cases were consolidated and placed on the trial calendar of Judge Albert S. Porter, then sitting in the chancery division.

Mrs. Seigel was represented in that litigation by attorney Charles Pressman. Pressman sought out John G. Phillips and asked him to enter the case as guardian *ad litem* and trustee for unborn beneficiaries of the two trusts. Phillips was duly appointed guardian by the court.

The consolidated cases proceeded to a bench trial in late 1981 and were continued from time to time until early 1982. Judge Porter announced that he would rule on the case on July 22, 1982. With this background, we now turn our attention to the case before us.

Plaintiff's second amended complaint alleged that Phillips met Pressman for lunch on July 14, 1982. At that meeting, Phillips was alleged to have used the following words:

> "That the bank has had dinner with the judge and that [therefore][1] Mrs. Seigel would lose the case unless $10,000 be paid to the judge by July 19, 1982. *** If the $10,000 were paid, a verdict would result in Mrs. Seigel's favor in the amount of $750,000."

In count I alleging slander, Harris Bank claims that Phillips' words were meant and understood by Pressman and others to mean that Harris Bank had unlawfully, wilfully, and feloniously offered and paid a bribe to the trial judge in order to obtain a favorable verdict. As a result, Harris Bank's reputation was damaged and it was exposed to public hatred, contempt, and ridicule. Count II alleges that Phillips' statements and conduct intentionally, wilfully, and wrongfully interfered with and obstructed Harris Bank's right to a fair and impartial trial on the merits.

The complaint did not have any allegations which denied the truth of the words allegedly used by Phillips. However, the complaint denied the truth of the meaning which Harris Bank placed on the words used by Phillips.

Mrs. Seigel's attorneys moved for the recusal of Judge Porter on July 22, 1982. Judge Porter took the motion under advisement. Shortly thereafter, Judge Porter denied the motion as without foundation and entered his ruling on the case in chief. He ruled in favor of Harris Bank on the major issue of Harris' fiduciary duty to Mrs. Seigel and in favor of Mrs. Seigel on the issue of Harris' timing in paying over the corpus of the trust properties. On this issue, he awarded Mrs. Seigel damages in an amount far less than that originally sought in the case.

Harris moved the court for reconsideration of the latter issue. After lengthy briefing and a hearing, Judge Porter declined to rule on the motion for reconsideration and, rather, decided to recuse himself from the case altogether. On March 14, 1983, he stated in open court:

---

[1]Plaintiff bank admits that the bracketed word "therefore" was inserted although that word was *not* used by Phillips. Plaintiff also alleged in paragraph 27 that Phillips "denied making the statement that the Bank had dinner with the Judge."

"[A]nd it is my understanding from the information that I can piece together that this Court was—it was inferred or said that this Court had met with officials of the Bank and had lunch with officials of the Bank during the course of these proceedings, which inferred that this Court had improperly colluded with officials of the Bank; and further, that this Court had made some type of demand for payment for favorable decision for the Seigel side of the case.

Now, that is what I have heard, whether it is true or not. This I do know, and this is one of the things that I strongly consider."

The case was transferred to the Honorable Richard L. Curry, who vacated all of Judge Porter's rulings and ordered a new trial on all issues. Harris seeks to recover the cost of retrial as damages.

Harris Bank alleged, in general fashion, that its reputation had been damaged. It also pleaded that Phillips' statements caused the bank to incur attorney and trustee fees and expenses arising out of the retrial of the *Seigel* litigation. No specific pecuniary losses were alleged, nor did the bank claim that the incurred fees and expenses arising out of the new trial were the result of damage to the bank's reputation.

Defendant's motion to dismiss for plaintiff's failure to state a cause of action pursuant to section 2—615 (Ill. Rev. Stat. 1985, ch. 110, par. 2—615) was sustained. Defendant also filed a supplemental motion to dismiss pursuant to section 2—619 (Ill. Rev. Stat. 1985, ch. 110, par. 2—619) based on privilege. Having dismissed the action under section 2—615, the trial court determined there was no need to rule on the section 2—619 motion.

I

■ A defamation is the publication of anything injurious to the good name or reputation of another or which tends to bring him into disrepute. A defamation designed for visual perception is a libel; an oral defamation is a slander. (*Whitby v. Associates Discount Corp.* (1965), 59 Ill. App. 2d 337, 340, 207 N.E.2d 482.) The gravamen of an action for defamation is the damage to plaintiff's reputation in the eyes of other persons. (*Cowper v. Vannier* (1959), 20 Ill. App. 2d 499, 503, 156 N.E.2d 761.) Defamatory words may be divided into those which are actionable *per se* and those which are actionable *per quod*. (*Cook v. East Shore Newspapers, Inc.* (1945), 327 Ill. App. 559, 588, 64 N.E.2d 751.) A publication is defamatory *per se* if it is so obviously and naturally harmful to the person aggrieved that proof of injurious

character can be, and is, dispensed with. (*Owen v. Carr* (1986), 113 Ill. 2d 273, 277.) Words actionable *per quod* are those which require extrinsic facts or innuendo to give them a slanderous or libelous meaning and require evidence to show that as a matter of fact, some substantial injury has followed from their use. *Brewer v. Hearst Publishing Co.* (7th Cir. 1950), 185 F.2d 846.

■ Rules applicable to slander are now applicable to libel as well. (*Mitchell v. Peoria Journal-Star, Inc.* (1966), 76 Ill. App. 2d 154, 159, 221 N.E.2d 516, *appeal denied* (1967), 35 Ill. 2d 631.) In this case, we have a corporate plaintiff. It has been held that an alleged defamation must assail the corporation's financial position, business methods, or accuse it of fraud and mismanagement. *American International Hospital v. Chicago Tribune Co.* (1985), 136 Ill. App. 3d 1019, 1024, 483 N.E.2d 965.

■ In reviewing the trial court's dismissal of this cause of action, we must accept as true all well-pleaded facts in the second amended complaint and all reasonable inferences therefrom to determine whether, as a matter of law, the complaint states a cause of action. (*Szajna v. General Motors Corp.* (1986), 115 Ill. 2d 294.) In a defamation action, a complaint must clearly identify the specific defamatory material. (*Heying v. Simonaitis* (1984), 126 Ill. App. 3d 157, 163, 466 N.E.2d 1137, *appeal denied* (1984), 101 Ill. 2d 565.) The dismissal of a complaint for failure to state a cause of action, including one for defamation, rests with the discretion of the trial court. *Antonelli v. Field Enterprises, Inc.* (1983), 115 Ill. App. 3d 432, 436, 450 N.E.2d 876.

Plaintiff's complaint does not specify whether a recovery is sought on the basis of slander *per se* or slander *per quod*. Therefore, we will first examine the complaint to determine if a cause of action is stated for slander *per se*.

## A

■ Words are slanderous *per se* if they are false and are so obviously and materially harmful to the person aggrieved that proof of injurious character can be, and is, dispensed with. (*Owen v. Carr* (1986), 113 Ill. 2d 273, 277.) The allegedly slanderous words must be considered under the innocent construction rule as stated in *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 442 N.E.2d 195:

> "[A] written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be in-

terpreted as referring to someone other than the plaintiff it cannot be actionable *per se.*" 92 Ill. 2d 344, 352, 442 N.E.2d 195.

The actual words which are alleged to be defamatory in the second amended complaint are virtually the same as those in previous complaints. The only change is the addition of the word "therefore" which is enclosed in brackets. Plaintiff alleges that in accusing the Harris Bank of corrupting a verdict, defendant used the following words: "That the Bank has had dinner with the Judge and that [therefore] Mrs. Seigel would lose the case unless $10,000 be paid to the Judge by July 19, 1982."

On the third and final amendment to its pleadings, the bank improperly inserted the word "therefore" in brackets prior to the mention of Mrs. Seigel. Harris' apparent need to alter, supplement, and interpret the alleged statement of Phillips is conclusive evidence that Phillips' actual words were not, standing by themselves, defamatory *per se.*

■ Words are held to be defamatory *per se* where they impute: (1) commission of a criminal offense; (2) infection with a communicable disease; (3) inability to perform, or want of integrity to discharge duties of office or employment, and (4) prejudicing a particular party in his trade, profession or calling. *Catalano v. Pechous* (1978), 69 Ill. App. 3d 797, 805, 387 N.E.2d 714, *aff'd* (1980), 83 Ill. 2d 146, 419 N.E.2d 350, *cert. denied* (1981), 451 U.S. 911, 68 L. Ed. 2d 300, 101 S. Ct. 1981.

A defamation can never be *per se* if the words themselves are capable of an innocent construction. *John v. Tribune Co.* (1962), 24 Ill. 2d 437, 442, 181 N.E.2d 105, *cert. denied* (1962), 371 U.S. 877, 9 L. Ed. 114, 83 S. Ct. 148; *Jacobs v. Gasoline Retailers Association* (1975), 28 Ill. App. 3d 7, 10, 328 N.E.2d 187, *appeal denied* (1975), 60 Ill. 2d 597.

■ Upon dismissing plaintiff's action, the trial court properly concluded:

> "The natural and obvious meaning of the words uttered by the defendant are that the bank had dinner with the judge and that the defendant learned that Mrs. Seigel would lose the case unless the judge was bribed. Those words implicate the defendant and the judge *but they do not implicate Harris.* The words 'the bank has had dinner with the judge' may reasonably be innocently interpreted." (Emphasis added.)

Plaintiff recognizes the existence of the innocent construction rule, but criticizes it "as far from clear that the rule is a *good one or*

*ought to be retained."* (Emphasis added.)

■ Plaintiff's argument and criticism of the innocent construction rule is not properly addressed to this court. As noted in *Walton v. Norphlett* (1977), 56 Ill. App. 3d 4, 5, 371 N.E.2d 978:

> "[T]he duty of the Appellate Court of Illinois is not to modify rules of law enunciated by our supreme court, but to follow them."

Moreover, it should be noted that the Illinois Supreme Court has chosen not to discard the innocent construction rule, but to give it a special gloss. *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 352, 442 N.E.2d 195.

*Chapski* did not radically alter *John v. Tribune Co.* While *Chapski* has added the phrase "may *reasonably* be innocently interpreted," it is hardly tenable that prior to *Chapski* an innocent construction could be *unreasonable*. In short, a *reasonable* innocent construction was always the mandate of *John v. Tribune Co.* and was applied in the numerous defamation cases which are *John's* progeny.

In *Richardson v. Dunbar* (1981), 95 Ill. App. 3d 254, 419 N.E.2d 1205, *appeal denied* (1981), 85 Ill. 2d 575, plaintiff argued that a statement, "[H]e grabbed [the police chief] by the shoulder and tried to turn him around," implied the commission of the offense of aggravated battery. The appellate court disagreed and said:

> "The alleged defamatory statement does not import commission of a crime in the language used, and requires explanation of surrounding circumstances to even suggest the meaning alleged to it. That explanation is necessary is evident from the fact that plaintiff \*\*\* in the following paragraphs of the complaint, alleges [innuendo] \*\*\*. Thus, it is clearly a case wherein plaintiff attempts to base a claim upon defamation *per quod* \*\*." 95 Ill. App. 3d 254, 260, 419 N.E.2d 1205.

In the case at hand, from an examination of the second amended complaint, it is apparent that plaintiff found it impossible to rest its claim of "slander *per se*" on defendant's words alone. Instead the bank found it necessary to "explain" the surrounding circumstances at great length in order to spell out defamation.

If the actual words spoken do not by themselves denote criminal (or unethical) conduct and in common usage have a more flexible and broader meaning than ascribed by plaintiff, then, as a matter of law, the words are nonactionable as defamation *per se*. (*Owen v. Carr* (1985), 134 Ill. App. 3d 855, 859, 478 N.E.2d 658, *aff'd* (1986), 113 Ill. 2d 273.) In *Owen*, it is alleged that defendant accused plaintiff of

deliberately trying to "intimidate" a judge. The court held such conduct was susceptible of an innocent construction and was not defamatory.

The test of slander *per se* is whether the words "are so obviously and naturally hurtful that proof of injury is not necessary." (*Renard v. Columbia Broadcasting System, Inc.* (1984), 126 Ill. App. 3d 563, 566, 467 N.E.2d 1090, *appeal denied* (1984), 101 Ill. 2d 587, *cert. denied* (1985), 471 U.S. 1116, 86 L. Ed. 2d 259, 105 S. Ct. 2358.) Here, there is nothing "obviously and naturally hurtful" to the bank with respect to the few words actually spoken by Phillips of and concerning the bank. The trial court appropriately noted:

> "An innocent construction of the words is suggested by the deposition testimony of Mr. Coleman, vice-president of Harris Bank. While the Seigel litigation was pending, Mr. Coleman attended a social gathering and was seated at the same dinner table with the judge who presided over the Seigel litigation. The dinner was innocent. This court does not consider this deposition testimony. for the purpose of deciding fact. Rather, the deposition testimony does provide an example of an innocent encounter between a judge and a party to a pending suit which could reasonably be described by the phrase which Plaintiff contends is defamatory."

Under the rule in *Chapski*, as correctly applied by Judge Duff, so long as the spoken words are capable of a reasonable innocent construction, the words are not actionable *per se*. *Audition Division, Ltd. v. Better Business Bureau of Metropolitan Chicago, Inc.* (1983), 120 Ill. App. 3d 254, 257, 458 N.E.2d 115.

## B

■ We now consider whether plaintiff alleged sufficient extrinsic facts to bootstrap the spoken words beyond innocent construction into the realm of defamation *per quod*. An action for slander *per quod* is established where the words not slanderous on their face are rendered defamatory by extrinsic facts, or innuendo, and special damages are proved. A complaint stating a cause of action for slander *per quod*, therefore, must allege extrinsic facts and special damages. *American International Hospital v. Chicago Tribune Co.* (1985), 136 Ill. App. 3d 1019, 1025-26, 483 N.E.2d 965.

Plaintiff attempts to put a defamatory gloss on the words by painting an elaborate "context." However, the context is not built of well-pleaded facts. Plaintiff has not pleaded sufficient extrinsic facts which would preclude a reasonable and nondefamatory construction

upon the words attributed to the defendant. Instead, the bank pleads only conclusions, which cannot substitute for the necessary element of extrinsic facts. As aptly noted by the trial court:

> "The Second Amended Complaint is replete with conclusions. In paragraph 13, plaintiff alleges that defendant called Mr. Pressman 'to arrange a meeting which he deemed important concerning a subject about which he was anxious.' There are no facts alleged to support the conclusion that defendant was 'anxious' or that he thought the meeting was 'important.' In paragraph 16, when setting out the allegedly defamatory words, plaintiff improperly interjects its conclusions that 'defendant Phillips also accused Harris Bank of corrupting the verdict of the trial judge ***.'
>
> In paragraph 19, plaintiff alleges that '[b]y defendant Phillips' words set forth above, defendant Phillips meant, and was understood by Pressman and others to whom the words were communicated to mean, that Harris Bank had unlawfully, willfully and feloniously corrupted the verdict of the trial judge in Cases Nos. 76 CH 1405 and 76 L 4927 to obtain a favorable decision for Harris Bank.' Whether the words may be understood as meaning that Harris corrupted the verdict is a question for the Court. How other persons interpret the words used by defendant is not relevant and does not make the words defamatory. *See*: *Tiernan v. East Shore Newspapers, Inc.* 1 Ill. App. 2d 150, 116 N.E.2d 896 (4th Dist. 1953)."

On analysis, plaintiff's second amended complaint appears to be an attempt to plead its defamation action only by alleging innuendo. Such innuendo amounts to nothing more than plaintiff's slanted deductions. The law does not recognize a cause of action for defamation by resorting to innuendo alone. (*Voris v. Street and Smith Publications* (1947), 330 Ill. App. 409, 413, 71 N.E.2d 338.) Rather, the function of innuendo is to explain a matter already expressed, but not to change the sense of the words used. *Life Printing & Publishing Co. v. Field* (1944), 324 Ill. App. 254, 262, 58 N.E.2d 307, *appeal denied* (1945), 388 Ill. 613; W. Prosser and W. Keeton, Torts sec. 111, at 782 (5th ed. 1984).

In place of well-pleaded "extrinsic facts," the second amended complaint is a litany of self-serving characterizations and constructions of the words spoken of and concerning the bank. Allegations in that form were properly not considered in ruling upon the validity of plaintiff's second amended complaint. The trial court, therefore, correctly ruled that the bank had not sufficiently pleaded

extrinsic facts to support an action for slander *per quod.*

In addition, the innocent construction rule has been applied to cases involving defamation *per quod.* In *American International Hospital v. Chicago Tribune Co.* (1985), 136 Ill. App. 3d 1019, 483 N.E.2d 965, this court held:

> "Plaintiff maintains that the circuit court erroneously applied the innocent construction rule to dismiss its complaint, which set forth a cause of action in libel *per quod.* We disagree.
>
> * * *
>
> Illinois law is unsettled as to whether the innocent construction rule applies to actions in libel *per quod,* in addition to libel *per se.* [Citation.] Nonetheless, decisions considering allegedly defamatory language in libel *per quod* actions have evaluated such language in light of 'related principles,' suggesting that the words be read in context and given their natural and obvious meanings, and the complaint dismissed if the challenged words are not reasonably or fairly capable of the meaning assigned to them by the plaintiff. [Citations.]" 136 Ill. App. 3d 1019, 1025-26, 483 N.E.2d 965.

In *Audition Division, Ltd. v. Better Business Bureau of Metropolitan Chicago, Inc.* (1983), 120 Ill. App. 3d 254, 458 N.E.2d 115, a report of the Better Business Bureau was alleged to be defamatory. Under the *Chapski* innocent construction rule, the court found that the report was not libelous *per se.* The court also concluded that the report was not libelous *per quod* since the plaintiff did not provide extrinsic facts which rendered the report defamatory.

The same result is dictated here. Plaintiff has not alleged sufficient extrinsic facts which would render the words slander *per quod.*

■■■ Next we must consider whether plaintiff properly alleged special damages to support an action for slander *per quod.* The allegations of the complaint dealing with special damages are:

> "29. By reason of false, wrongful and malicious statements by Defendant Phillips, the trial judge recused himself *sua sponte* on March 11, 1983. In open court on March 14, 1983, the trial judge explained the reasons for his recusal:
>
> '*** and it is my understanding from the information that I can piece together that this Court was—it was inferred or said—that this Court had met with officials of the Bank and had lunch with officials of the Bank during the course of these proceedings, which inferred that this Court had improperly colluded with officials of the Bank; and further,

that this Court had made some type of demand for payment for favorable decision for the *Seigel* side of the case. Now that is what I have heard, whether it is true or not. This I do know, this is one of the things that I strongly consider.'

Once the case was transferred to a new judge, that judge granted, by order, a new trial on May 31, 1983, requiring Harris Bank, at its own expense, to retry cases Nos. 76 CH 1405 and 76 L 4927. Exhibit A. and incorporated herein.

30. Defendant Phillips' malicious, unlawful and false statements were transmitted to others and the general public, exposed Harris Bank to public hatred, contempt and ridicule and tended to deprive Harris Bank of public confidence and injured it in its business and reputation. Defendant Phillips' statement also required Harris Bank to incur further attorneys and trustee's fees and expenses for the trial of the Cases Nos. 76 CH 1405 and 76 L 4927."

The words alleged to be slanderous were first published on July 14, 1982. Seven months later, Judge Porter recused himself *sua sponte* without disclosing the source of the rumors he heard. Other allegations of plaintiff's complaint suggest that the conduct of Mrs. Seigel's attorneys may have led to the recusal. Thus, the complaint fails to allege facts to support a causal connection between defendant's alleged slander and the recusal.

Plaintiff claims to have been damaged because it incurred the expense of retrial of the *Seigel* case due to the recusal of Judge Porter. The relitigation expenses claimed do not constitute special damages within the law of defamation *per quod* because plaintiff would have incurred the same expenses even if defendant's words were not defamatory.

In addition, the expenses incurred in litigating the *Seigel* cases should not be the basis for this subsequent litigation. There is no civil cause of action for misconduct which occurred in prior litigation. (*Ritter v. Ritter* (1943), 381 Ill. 549, 46 N.E.2d 41; *John Allan Co. v. Brandow* (1965), 59 Ill. App. 2d 328, 207 N.E.2d 339, *appeal denied* (1965), 32 Ill. 2d 625; *Dean v. Kirkland* (1939), 301 Ill. App. 495, 23 N.E.2d 180.) Petitions to redress injuries resulting from misconduct in judicial proceedings should be brought in the same litigation. The courts have said that public policy precludes a second lawsuit because otherwise there would never be an end to litigation. It is also improper for a trial court to review previous litigation which has gone on before another judge.

The allegation that the language exposed the bank to "pub-

lic hatred, contempt and ridicule and tended to deprive Harris Bank of public confidence and injured it in its business reputation" is descriptive of general damages. These are not special damages and are therefore not actionable as slander *per quod.* See *Bruck v. Cincotta* (1977), 56 Ill. App. 3d 260, 371 N.E.2d 874, *appeal denied* (1978), 71 Ill. 2d 602; *Hambric v. Field Enterprises, Inc.* (1964), 46 Ill. App. 2d 355, 196 N.E.2d 489.

We, therefore, conclude that the plaintiff did not adequately plead special damages to support a cause of action for slander *per quod.*

## II

■ The trial court properly dismissed count II, which alleged that the defendant's statements and conduct "intentionally, willfully and unlawfully obstructed Harris Bank's rights to a fair and impartial trial on the merits." Again, plaintiff has failed to allege facts to support a causal connection between defendant's conduct and the retrial when its own pleading alleges that Mrs. Seigel's attorneys caused the retrial of the *Seigel* litigation. Also, as stated above, the law does not recognize a separate cause of action for misconduct in a prior lawsuit.

Plaintiff argues that when there are allegations of judicial corruption, there should be a remedy. A review of the record reveals that the subject matter of plaintiff's complaint has been reported to the appropriate bodies having jurisdiction over such matters and that appropriate acton has been taken or is pending and undetermined.[2] The sole function of the trial court was to determine whether the plaintiff's complaint met the minimum legal requirements to state a cause of action.

We conclude that the trial court was correct when it dismissed plaintiff's second amended complaint. For the reasons stated herein, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS and HARTMAN, JJ., concur.

---

[2] In *United States v. Phillips* (N.D. Ill.), 83 C.R. 975, a jury acquitted defendant of charges which involved some of the subject matter of this action.