JOSEPH SALAMONE, Plaintiff-Appellant, v. HOLLINGER INTER-
NATIONAL, INC., *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—02—2492

Opinion filed March 30, 2004.

Stephen Fiorentino, of Stephen Fiorentino, Ltd., and David A. Novoselsky and Leslie J. Rosen, both of Novoselsky Law Offices, both of Chicago, for appellant.

Damon E. Dunn, of Funkhouser, Vegosen, Liebman & Dunn, Ltd., of Chicago, for appellees.

JUSTICE CAHILL delivered the opinion of the court:

The dispute in this case arose from a news article published in the Chicago Sun-Times on March 7, 2001, headlined *Mob links hurt Rosemont casino bid*. Plaintiff Joseph Salamone, who was referred to in the article as a "reputed organized crime figure," filed a defamation and false light invasion of privacy action against Chris Fusco, Chicago Sun-Times, Inc., and Hollinger International, Inc. The trial court dismissed the action under section 2—615 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 2000)). We affirm.

Here, in full, is the article on which the complaint is based:

"*Mob links hurt Rosemont casino bid*

The Illinois Gaming Board Tuesday released more than a dozen pages of reasons for revoking Emerald Casino's state gambling license and denying its request to open a Rosemont gambling barge.

Mob ties, lies by company executives and a decision to begin building the Rosemont casino without gaming-board approval all were cited in two legal orders from the board.

Their release set off what could be a long battle in the northwest

suburb. Emerald is denying the board's allegations and plans to file an appeal, which it must do by the end of business Tuesday.

'The company disagrees with the preliminary findings and intends to file its response,' Emerald [p]resident Kevin Larson said in a news release. Emerald officials declined to comment further.

The company, the board said, failed to conduct a proper investigation before allowing a trust held by Sherri Boscarino, wife of reputed mobster, Nick Boscarino, to get a stake in the planned casino. *Joseph Salamone, another reputed organized crime figure, was another investor.*

Gaming Board investors also learned that one of the subcontractors working on the casino site was D&P Construction. The owner of that company, Josephine DiFronzo, is married to Peter DiFronzo and is the sister-in-law of John DiFronzo, both of whom have been connected to the mob, according to the gaming board.

Emerald's decision to hammer out an agreement with Rosemont to begin construction compromised its financial integrity and business practices, the board ruled. Emerald already has spent $25 million on the project.

The board also cited misleading statements by principal owners Kevin Flynn and his father, Donald, regarding the selection of Rosemont as a site." (Emphasis added.) C. Fusco, *Mob links hurt Rosemont casino bid*, Chi. Sun-Times, March 7, 2001, at NP 27.

Plaintiff filed a first amended complaint on January 11, 2002, alleging defamation *per se*, defamation *per quod* and false light invasion of privacy against all three defendants. Defendants moved to dismiss the complaint under section 2—615 of the Code for failure to state a claim on which relief can be granted. The trial court granted the motion, finding that the phrase "reputed organized crime figure" was vague and capable of an innocent construction.

■ A dismissal under section 2—615 of the Code is reviewed *de novo*. *Brandt v. Boston Scientific Corp.*, 204 Ill. 2d 640, 644-45, 792 N.E.2d 296 (2003). When ruling on a section 2—615 motion to dismiss, the court must accept as true all well-pled facts in the complaint and reasonable inferences drawn therefrom. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86, 672 N.E.2d 1207 (1996). If, after viewing the allegations in the light most favorable to the plaintiff, the complaint fails to state a cause of action on which relief can be granted, the motion should be granted. *Bryson*, 174 Ill. 2d at 86.

■ A statement is defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with that person. *Bryson*, 174 Ill. 2d at 87. A statement may be either defamatory on its face or proven defamatory through extrinsic facts that demonstrate

the statement has a defamatory meaning. *Bryson*, 174 Ill. 2d at 87. A statement may be actionable *per se* if it is defamatory on its face and fits in one of the limited categories outlined by our supreme court. *Bryson*, 174 Ill. 2d at 87. Included in these categories are: (1) words that impute the commission of a crime; and (2) words that prejudice a party or impute lack of ability in his trade, profession or business. *Bryson*, 174 Ill. 2d at 88. If the defamatory statement is actionable *per se*, the plaintiff need not plead or prove actual damages. *Bryson*, 174 Ill. 2d at 87. These statements "are thought to be so obviously and materially harmful to the plaintiff that injury to [the plaintiff's] reputation may be presumed." *Bryson*, 174 Ill. 2d at 87.

■ The innocent construction rule is an exception to the actionable *per se* categories: where a statement falls within one of the recognized categories of words that are actionable *per se*, but is reasonably capable of an innocent construction, the statement will not be found actionable *per se*. *Bryson*, 174 Ill. 2d at 90. The innocent construction rule requires consideration of the statement in context, giving the words, and their implications, their natural and obvious meaning. *Bryson*, 174 Ill. 2d at 90. "If, so construed, a statement 'may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff, it cannot be actionable *per se*.' " *Bryson*, 174 Ill. 2d at 90, quoting *Chapski v. Copley Press*, 92 Ill. 2d 344, 352, 442 N.E.2d 195 (1982). Whether a statement is reasonably capable of an innocent construction is a question of law. *Bryson*, 174 Ill. 2d at 90.

Plaintiff first contends he stated a cause of action for defamation *per se*. He argues the headline *Mob links hurt Rosemont casino bid* and characterization of plaintiff in the article as a "reputed organized crime figure" impute the commission of a crime and plaintiff's inability to "adequately serve[ ] as an investor in the casino." Plaintiff also argues these characterizations are not subject to the innocent construction rule.

Defendants respond, arguing the headline, when read in conjunction with the text of the article, and in particular the phrase "reputed organized crime figure," is reasonably capable of an innocent construction. Defendants cite *Antonelli v. Field Enterprises, Inc.*, 115 Ill. App. 3d 432, 450 N.E.2d 876 (1983). The plaintiff in *Antonelli* brought a defamation *per se* action stemming from the defendant's publication of a news article entitled *Mobster vs. Media*, which referred to the plaintiff as a "reputed mobster." *Antonelli*, 115 Ill. App. 3d at 434. The court cited the general rule that a headline and news report to which it refers must be considered together when deciding whether words contained therein are reasonably capable of an innocent

construction. *Antonelli*, 115 Ill. App. 3d at 435, citing *Dauw v. Field Enterprises, Inc.*, 78 Ill. App. 3d 67, 71-72, 397 N.E.2d 41 (1979); *Reed v. Albanese*, 78 Ill. App. 2d 53, 58, 223 N.E.2d 419 (1966). After considering the headline and text of the article, the court held the words "mobster" and "reputed mobster" were not actionable *per se* because they were reasonably capable of an innocent construction. *Antonelli*, 115 Ill. App. 3d at 435. The court reasoned that the headline reference to "mobster" was made in conjunction with the balance of the story in which the plaintiff was referred to as a "reputed mobster." *Antonelli*, 115 Ill. App. 3d at 435. The court defined "reputed" to mean " 'supposed, thought, or reckoned.' " *Antonelli*, 115 Ill. App. 3d at 435, quoting Webster's Third New International Dictionary 1929 (1976). The court then defined "supposed" as " 'believed to be or accepted as such usu. on slight grounds or in error: erroneously imputed or ascribed.' " *Antonelli*, 115 Ill. App. 3d at 435, quoting Webster's Third New International Dictionary 2298 (1971). The court concluded that under the plain meaning of the word "reputed," the defendant "accurately depicted [the] plaintiff as one about whom the word 'mobster' had been 'supposedly,' perhaps 'erroneously imputed,' as the balance of the article reveals, thereby supporting the 'innocent' construction of the word 'mobster.' " *Antonelli*, 115 Ill. App. 3d at 435. The court went on to note in *dicta* that the word "mobster" was a truthful characterization of the plaintiff, who was an admitted convict. *Antonelli*, 115 Ill. App. 3d at 435-36.

Plaintiff argues *Antonelli* is distinguishable because he does not have a criminal record that would support the veracity of defendant's characterization of plaintiff as a member of the mob and "reputed organized crime figure." But the court in *Antonelli* did not rely on the plaintiff's criminal history to support its holding that the word "mobster," when modified by the word "reputed," is reasonably capable of an innocent construction. Nor does plaintiff cite to authority for his argument that the lack of a criminal record would turn an otherwise nonactionable statement under the innocent construction rule into a statement that is actionable *per se*.

■ We conclude that *Antonelli* is close enough factually to control the case before us. Reading the headline in conjunction with the full text of the article, we believe that defendants characterized plaintiff, not as a mobster, but as a person who is believed to be, possibly erroneously, an organized crime figure. There is nothing in the remainder of the article that would support an opposite conclusion.

Since we conclude that the statements pass an innocent construction test, we need not reach the constitutional question of whether the statements were, as the defendants argue, expressions of opinion

protected under the first amendment to the United States Constitution. U.S. Const., amend. I. We note in passing that defendants do not argue the opinion is that of the Illinois Gaming Board, nor do they raise the "fair-reporting privilege." See *Myers v. The Telegraph*, 332 Ill. App. 3d 917, 923, 773 N.E.2d 192 (2002) (fair-reporting privilege protects news accounts based on the written and verbal statements of governmental agencies and officials made in their official capacities). The official report by the Illinois Gaming Board refers to plaintiff as someone "associated with persons who have been identified as members and associates of organized crime."

In reaching our conclusion that the words at issue in this case are reasonably capable of an innocent construction, we recognize that the analysis relies heavily on a benign reading of "reputed." While the modifier "reputed" is a slippery word to handle, we have not found a single case where its use has been held irrelevant to an analysis of the actionable words it modifies. For better or worse, the use of "reputed" in front of derisive characterizations of people appears to be a safe harbor for the media. The obvious question: "Reputed by whom?" is easily deflected by the statutory privilege that protects a journalist from revealing his sources. See 735 ILCS 5/8—901 *et seq.* (West 2002); *People v. Slover*, 323 Ill. App. 3d 620, 623, 753 N.E.2d 554 (2001) (reporters have a statutory, qualified privilege protecting their sources, whether confidential or not, from compelled disclosure).

Having concluded that plaintiff's defamation *per se* claims were properly dismissed, we turn to plaintiff's allegations of defamation *per quod*.

■ A defamatory statement that is not actionable *per se* must be accompanied by an allegation that the plaintiff suffered special damages. *Bryson*, 174 Ill. 2d at 87-88. Special damages in this context are damages to the plaintiff's reputation and pecuniary losses resulting from the defamatory statement. *Bryson*, 174 Ill. 2d at 104. "[G]eneral allegations such as damage to one's health or reputation, economic loss, and emotional distress are insufficient to state a cause of action for defamation *per quod*." *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 694, 742 N.E.2d 425 (2000).

Plaintiff alleged the following damages against each defendant in his counts for defamation *per quod*:

> "As a direct and proximate result of [the] statement, [plaintiff] suffered humiliation, embarrassment and harm to his reputation in that members of his community who associated with him prior to the publication of the March 7, 2001 article ceased associating with him after the publication of the article and, on information and belief, repeat customers of his independent grocery store ceased patronizing his store after the publication of the article.

\*\*\* [Plaintiff] has also suffered humiliation and embarrassment in that he has been subjected to repeated jokes and ridicule by members of his community based on his alleged status as an organized crime figure, e.g., suggestions made aloud before [plaintiff] and other members of his community that [plaintiff] would break a person's leg or otherwise cause them harm if they were to displease him.

\*\*\* As a further direct and proximate result of [defendants'] statements, and the effect they have had on his treatment in his community, [plaintiff] has suffered from sleeplessness, depression and weight loss."

There is no precise definition for what will constitute special damages sufficient to sustain a cause of action for defamation *per quod*. See *Kurczaba*, 318 Ill. App. 3d at 694. In *Kurczaba*, the plaintiffs alleged generally that as a result of defamatory statements made by the defendants, the plaintiffs suffered damage to their reputations, loss of business income, great embarrassment, public humiliation, mental anguish and emotional distress. *Kurczaba*, 318 Ill. App. 3d at 692, 695. The court concluded the allegations lacked sufficient specificity to support their claim for defamation *per quod*. *Kurczaba*, 318 Ill. App. 3d at 695. The court relied on *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 416-17, 667 N.E.2d 1296 (1996) (allegations that the plaintiff was damaged monetarily by losing gainful employment and wages and had suffered great mental pain and anguish for which she underwent expensive treatment); *Quinn v. Jewel Food Stores, Inc.*, 276 Ill. App. 3d 861, 870, 658 N.E.2d 1225 (1995) (allegations that a franchiser refused to grant the plaintiff a franchise); *Barry Harlem Corp. v. Kraff*, 273 Ill. App. 3d 388, 395, 652 N.E.2d 1077 (1995) (allegation that upon information and belief, the plaintiff lost patients who would have otherwise presented themselves for treatment); *Taradash v. Adelet/Scott-Fetzer Co.*, 260 Ill. App. 3d 313, 318, 628 N.E.2d 884 (1993) (allegations that former customers refused to deal with the plaintiff, rendering the plaintiff unable to sell his product, which resulted in lost commissions and income); *Schaffer v. Zekman*, 196 Ill. App. 3d 727, 733, 554 N.E.2d 988 (1990) (allegations that the plaintiff had been disgraced and injured in his professional reputation); *Heerey v. Berke*, 188 Ill. App. 3d 527, 532, 544 N.E.2d 1037 (1989) (allegations that the plaintiff suffered from mental anguish and distress, acute nervousness, bodily pain and the plaintiff's reputation for honesty and integrity, business opportunities, as well as her professional standing had been impaired); *Harris Trust & Savings Bank v. Phillips*, 154 Ill. App. 3d 574, 585-86, 506 N.E.2d 1370 (1987) (allegations that the plaintiff was exposed to public hatred, contempt and ridicule that

injured the plaintiff's public confidence, business and reputation); and *von Solbrig Memorial Hospital v. Licata*, 15 Ill. App. 3d 1025, 1030-31, 305 N.E.2d 252 (1973) (allegations that the plaintiff suffered ill health, emotional distress and damage to reputation and medical practice). *Kurczaba*, 318 Ill. App. 3d at 694-95. The court also distinguished *Becker v. Zellner*, 292 Ill. App. 3d 116, 127, 684 N.E.2d 1378 (1997), because the plaintiffs there alleged a third party had actually stopped doing business with the plaintiffs as a result of the defamatory statement. *Kurczaba*, 318 Ill. App. 3d at 694-95.

■ Plaintiff's allegations of special damages are no more specific than those contained in *Kurczaba* or the cases relied on by *Kurczaba*. Plaintiff alleged he "suffered humiliation, embarrassment and harm to his reputation" because members of his community who associated with plaintiff before the article was published ceased associating with him after the publication of the article. Plaintiff also alleged that, on information and belief, repeat customers of his grocery store ceased patronizing his store after the article was published. Plaintiff alleged humiliation and embarrassment from being the subject of repeated jokes and ridicule by members of his community. Finally, plaintiff alleged he has suffered from sleeplessness, depression and weight loss. Plaintiff failed to allege with particularity which members of the community have ceased associating with him and patronizing his store. Nor did plaintiff allege actual monetary loss from a lack of business. Plaintiff's allegations that he was ridiculed and suffered sleeplessness, depression and weight loss lack the same specificity.

■ Finally, we consider plaintiffs' false light invasion of privacy claims. To sustain a cause of action for false light invasion of privacy, a plaintiff must allege: (1) he was placed in a false light before the public as a result of the defendant's actions; (2) the false light would be highly offensive to a reasonable person; and (3) the defendant acted with actual malice. *Kurczaba*, 318 Ill. App. 3d at 696. Plaintiff has failed to allege the most basic element of a false light cause of action: that the statement was false. See *Kirchner v. Greene*, 294 Ill. App. 3d 672, 683, 691 N.E.2d 107 (1998) (most basic element to false light cause of action is false statement). The statement characterizes plaintiff as supposedly or known to be, perhaps erroneously, an organized crime figure. While the statement may be construed as a strong criticism of plaintiff, it is not a statement that is capable of being verified as true or false. See *Dubinski v. United Airlines Master Executive Council*, 303 Ill. App. 3d 317, 332, 708 N.E.2d 441 (1999) (false light plaintiff must allege false statement; strong language critical of the plaintiff is insufficient to support a false light cause of action).

The judgment of the circuit court is affirmed.

Affirmed.

WOLFSON, P.J., and BURKE, J., concur.