# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 04-2152

KARLA K. KNAFEL,

*Plaintiff-Appellant,*

v.

CHICAGO SUN-TIMES, INC.
and SUN-TIMES ONLINE,

*Defendants-Appellees.*

———————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 03 C 6434—**Amy J. St. Eve**, *Judge.*

———————

ARGUED APRIL 15, 2005—DECIDED JUNE 29, 2005

———————

Before FLAUM, *Chief Judge*, and BAUER and EVANS,
*Circuit Judges*.

EVANS, *Circuit Judge.* Michael Jordan, erstwhile
North Carolina Tar Heel and Chicago Bulls star, had an
affair with a woman named Karla Knafel, an affair he
wanted her to keep mum about. To that end, she alleges in
her complaint in this action, he promised to pay her
$5 million; he denies it (not the affair, just the promise to
pay hush money). To put the matter to rest, Jordan filed a
preemptive suit in the circuit court of Cook County accusing

Knafel of extortion. Or, as columnist Richard Roeper of the Chicago Sun-Times put it:

> In two days, a Cook County judge will rule on motions in the dispute between Knafel, who says Michael Jordan promised to pay her $5 million not to discuss their affair, and MJ, who wants the case to bounce off the rim and go out of bounds like a Kwame Brown jumper from the top of the key.

Roeper also reported that when a ruling in the lawsuit was delayed, Knafel said she was disappointed; she wanted to move on with her life. Roeper again:

> Right. After all, what better way for Knafel to put this all behind her than to appear in a courtroom in an effort to extort—I mean receive—$5 million from one of the most famous personalities since Jesus? Once the case is over, the would-be pop vocalist can continue her quest for privacy by auditioning for "Mid-Life American Idol," posing nude for Playboy and then running for office.

Unflattering as they are, it is not these remarks that Knafel objects to. She has sued the Chicago Sun-Times and the Sun-Times Online (the article appeared both in the print version and the online version of the Sun-Times and we will refer to both as the Sun-Times) for defamation, alleging that other statements can only be interpreted to state falsely that she committed the crime of prostitution and thus are defamatory *per se* under Illinois law. United States District Judge Amy J. St. Eve dismissed the lawsuit for failure to state a claim, pursuant to the Sun-Times' motion. Knafel appeals.

Roeper began his column by recounting what he observed one night when a well-known celebrity appeared in a Los Angeles bar. Women threw themselves at the celebrity and were "behaving in a way that indicated they'd be willing to have a physical encounter with the movie star after

an unusually short courtship." Roeper wonders what female groupies expect to get from such encounters. One possibility is that

> there are some women who see a famous horny guy, blink their eyes and hear the ka-ching of a cash register.

> Women like Karla Knafel.

Later in the column, Roeper explains his take on something Knafel said in court:

> In other words, you had sex with a famous, wealthy man, and you claim he promised to pay you $5 million to keep quiet about it, and now you want your money.

Roeper sums it up:

> Knafel was once an aspiring singer. She's now reportedly a hair designer. But, based on the money she's been paid already and the additional funds she's seeking in exchange for her affair with Jordan, she's making herself sound like someone who once worked in a profession that's a lot older than singing or hair designing.

The issue for us is whether the latter statements constitute defamation *per se* under Illinois law and, intertwined with that issue, whether the case was properly resolved pursuant to a motion to dismiss the complaint. Our review is *de novo. Hickey v. O'Bannon*, 287 F.3d 656 (7th Cir. 2002). Illinois substantive law and federal procedural law apply to our analysis. *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918 (7th Cir. 2003).

Defamation actions provide redress for false statements of fact that harm a plaintiff's reputation. *Brennan v. Kadner*, 351 Ill. App. 3d 963, 286 Ill. Dec. 725, 814 N.E.2d 951 (2004). A statement is defamatory if it tends to cause harm, which lowers the reputation of a person in the com-

munity or deters others from associating with her. *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 180 Ill. Dec. 307, 607 N.E.2d 201 (1992); *Dubinsky v. United Airlines Master Executive Council*, 303 Ill. App. 3d 317, 236 Ill. Dec. 855, 708 N.E.2d 441 (1999). To prove defamation, Knafel must show that the defendant made a false statement about her; that the defendant caused an unprivileged publication of the statement to a third party; and that the publication of the statement harmed her. *Parker v. House O'Lite Corp.*, 324 Ill. App. 3d 1014, 258 Ill. Dec. 304, 756 N.E.2d 286 (2001). Illinois recognizes two types of defamation—defamation *per se* and defamation *per quod*. This case is based on a claim of defamation *per se*.

Defamation *per se* involves statements so harmful to reputation that damages are presumed. *Van Horne v. Muller*, 185 Ill. 2d 299, 235 Ill. Dec. 715, 705 N.E.2d 898 (1998). Five categories of defamatory statements are actionable as defamation *per se*, including the one relevant here—a statement which imputes to the plaintiff the commission of a criminal offense. Knafel contends that statements in the Roeper column impute to her the crime of prostitution.

However, even a statement which falls into a category supporting a claim for defamation *per se* will not be found to be defamatory if it is "reasonably capable of an innocent construction." *Kolegas*, 607 N.E.2d at 206. Courts must consider statements in context, "giving the words, and their implications, their natural and obvious meaning." *Bryson v. News America Publ'ns, Inc.*, 174 Ill. 2d 77, 220 Ill. Dec. 195, 672 N.E.2d 1207, 1215 (1996); *see also Harrison v. Chicago Sun-Times, Inc.*, 341 Ill. App. 3d 555, 276 Ill. Dec. 1, 793 N.E.2d 760 (2003). If the complained-of statement "may reasonably be innocently interpreted, it cannot be actionable *per se*." *Harrison*, 793 N.E.2d at 772. Illinois courts emphasize that the interpretation must be reasonable. Both the courts of Illinois and our court have said, to quote our

case, that "[w]hether a statement is reasonably capable of an innocent construction is a question of law for the court to decide." *Republic Tobacco v. North Atlantic Trading*, 381 F.3d 717, 727 (7th Cir. 2004).

With the substantive law in mind, we will turn to the procedural posture of the case. As we noted, Knafel's lawsuit was dismissed pursuant to the newspaper's motion to dismiss the complaint. Knafel claims that the dismissal was improper. She asserts that in *Muzikowski* we held that because of the different standards of pleading in Illinois courts versus federal courts, the innocent construction rule cannot be applied on a motion to dismiss in federal court. She also contends that Judge St. Eve looked to matters outside the pleadings in making her decision, thus converting the motion to a motion for summary judgment without giving notice and allowing Knafel time to engage in discovery.

Knafel's support for her contention that matters outside the pleadings were considered is Judge St. Eve's use of the phrases "non-disclosure agreement" and "non-disclosure contract" to describe the agreement between Knafel and Jordan; the argument seems to be that the Cook County judge used the phrases; therefore, because Judge St. Eve also used the phrases, she must have considered the Cook County decision—a matter outside the pleading—in her evaluation of this case. The argument is an air ball. A nondisclosure agreement is what was involved between Knafel and Jordan. How else was the district judge to refer to it? We're quite sure the judge could have come up with the language all by herself. As to the need for discovery, Knafel fails to tell us what sort of relevant evidence she might "discover." At one point she says, "As a hypothetical example, Ms. Knafel might be able [to] produce evidence that no one could think that the Article's statements referred to anything but prostitution." That is certainly a tall order. More importantly, the truly relevant evidence

in this case is Roeper's column, which was attached to the complaint and therefore properly considered on a motion to dismiss. And at least one of the statements in the column, the reference to the "profession that's a lot older than singing . . . ," would seem to allude to prostitution. The issue here, though, is not whether Roeper alluded to prostitution, but whether he necessarily implied that Knafel committed the crime of prostitution. We cannot see how discovery helps Knafel prove that he did.

Knafel also misapprehends our decision in *Muzikowski*. It does not baldly stand for the proposition that motions to dismiss can never be granted on the issue of innocent construction. The facts of that case, recounted very briefly, are that Robert Muzikowski devoted years of his life to establishing and coaching Little League Baseball in two of Chicago's poorest neighborhoods. In 1992, Daniel Coyle, an editor at "Outside" magazine, spent a season as an assistant coach of a little league team in one of Muzikowski's leagues. Based on that experience, Coyle wrote a book called "Hardball: A Season in the Projects." Paramount Pictures then made a movie based on the book; the movie, titled "Hardball," starred Keanu Reeves as a character called Conor O'Neill. Muzikowski contended that O'Neill was a portrayal of him, and an unflattering and defamatory portrayal of him at that. A lawsuit and an appeal followed, which led to our discussion of pleading requirements, specifically in defamation lawsuits in which the person defamed is not actually named in the publication—a situation in which defamation is, quite naturally, harder to prove.

We noted that Illinois may have a heightened pleading requirement for complaints based on publications that do not literally name the plaintiff. However, we pointed out, an Illinois pleading rule does not apply in a federal court, and in federal court Muzikowski was entitled to the usual rules for notice pleading in Federal Rule of Civil Procedure 8.

Looking at his complaint, we were not convinced that there was no possibility that Muzikowski might be able to prevail on his claim. Therefore, on those facts, Muzikowski's complaint was adequate and dismissal was improper. The general principle established in the case is that federal pleading rules apply to defamation suits in federal court; the specific holding was that under Federal Rule of Civil Procedure 8, Muzikowski's complaint was adequate to avoid dismissal. We see no impediment, especially in a less complex case such as the one before us, to a judge evaluating, in context on a motion to dismiss, the natural and obvious meaning of the accused language and then determining whether a statement may reasonably be innocently interpreted. That is what Judge St. Eve did in this case and what we will now consider *de novo.*

First, we need to know what exactly the crime of prostitution is. In Illinois, the crime is as follows:

> Any person who performs, offers or agrees to perform any act of sexual penetration as defined in Section 12-12 of this Code for any money, property, token, object, or article or anything of value, or any touching or fondling of the sex organs of one person by another person, for any money, property, token, object, or article or anything of value, for the purpose of sexual arousal or gratification commits an act of prostitution.

720 ILCS 5/11-14(a). As relevant to our analysis, prostitution is an "act," a discrete event, which, we suspect, is what most people would assume.

Our inquiry, then, is whether there is a reasonable, innocent construction of Roeper's words, other than that he is accusing Knafel of prostitution. We start with the obvious: Roeper is highly critical of Knafel's actions. One of his statements that Knafel objects to is that she is the type of woman who looks at a wealthy man and sees dollar signs. That, as Roeper wisely and accurately points out, is not un-

common. Money and power turn toads into princes in some eyes. So, is it reasonable to read Roeper's words and not think of prostitution? We think so. In fact, we think the most likely interpretation of the words is that Knafel is a gold digger, a woman who wants a longer term relationship with a man because of his money, not one who would look at a wealthy man and see a chance to make a few quick bucks (or even quite a few quick bucks) for a one-time encounter.

Roeper also says that Knafel has been an aspiring singer and is now a hair designer, but based on the money she wants "in exchange for her affair with Jordan, she's making herself sound like someone who once worked in a profession that's a lot older than singing or hair designing." We see two significant concepts in this passage. Roeper says Knafel was having an "affair" with Jordan. It is reasonable to interpret that word to imply a longer term relationship than is contemplated in the Illinois definition of prostitution. Secondly, as we said, despite the reluctance of counsel for the Sun-Times to concede the obvious at oral argument, Roeper almost certainly refers to prostitution when he talks about an "older" profession. But it is reasonable to read the passage as saying that although Knafel was having an affair (i.e., a longer term relationship) with Jordan, by demanding so much money from him she is demeaning herself. Roeper does not say Knafel has committed the crime of prostitution but, rather, she is making herself sound like she has. The words "sound like" imply similarity, but not identity. In short, Roeper is hard on Knafel as revealed by the headline of the column: "Is Karla Knafel's affection really worth $5 million?" But his words are reasonably (and easily) subject to an innocent construction; i.e., one that stops short of saying she committed a crime.

Our conclusion is supported by other Illinois cases. For example, in *Antonelli v. Field Enterprises, Inc.*, 115 Ill. App. 3d 432, 71 Ill. Dec. 188, 450 N.E.2d 876 (1983), a news

article was titled "Mobster v. Media" and referred to the plaintiff as a "reputed mobster." The court found those words subject to an innocent construction. The headline had to be read in conjunction with the rest of the story in which the plaintiff was referred to as a "reputed mobster," or one about whom the word "mobster" had been "supposedly," perhaps "erroneously imputed." Similarly, in *Salamone v. Hollinger International, Inc.*, 347 Ill. App. 3d 837, 283 Ill. Dec. 245, 807 N.E.2d 1086 (2004), a Chicago Sun-Times headline said, "Mob links hurt Rosemont casino bid." Reading the headline in conjunction with the full text of the article, the court found that the defendant characterized the plaintiff not as a mobster, but as a person who is believed, possibly erroneously, to be an organized crime figure. In another case, a newspaper article said a woman "kidnapped" her daughter. The court found an innocent construction, in part because "the word 'kidnapped' does not necessarily denote a criminal offense, but is also used in custody contexts to describe a wrongful taking of a child." *Harrison*, 793 N.E.2d at 773. If these examples are subject to an innocent construction, the statements of which Knafel complains certainly are. The judgment of the district court is AFFIRMED.

A true Copy:

      Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*